ALEXANDER H. OLMSTEAD *against* SEABORN HILL.

ERROR *to Crawford Circuit Court.*

A party, to entitle himself to a new trial on the ground of newly discovered testimony, must satisfactorily show to the court, 1st. That in the preparing of the case for trial, he was guilty of no neglect or *laches.* 2ndly. That the new evidence sought to be introduced could not have been procured by due diligence at the former trial. 3dly. That such evidence is *material* and *important,* which must be shown to the court either by the affidavit of the witness himself, or by some other legal means. 4thly. That this new evidence is not cumulative in its character or consequences.

Cumulative evidence is such as tends to support the fact or issue which was before attempted to be proved upon the trial.

To give to a clerk or agent a portion of the profits of sales, as a compensation for his labor, on the amount of goods sold, does not constitute the agent or clerk a partner in the business, *if it appear* that it was a mode of payment designed to increase diligence and secure exertions.

Upon the principles of commercial policy, an agreement may constitute a partnership as to third persons, when it creates no such relation between the parties themselves.

And, therefore, a clerk or an agent may, by his own conduct, come to be regarded as a partner by the trading community, and be sued as such, and yet at the same time be liable to an action at law by the real partners.

For they who hold themselves out to the world as partners, are to be so regarded, as to creditors and third persons: and the partnership may be established by any evidence showing that they so held themselves out to the public, and were so regarded by the trading community.

Between themselves, the agreement or contract alone constitutes them partners.

This was an action of assumpsit, brought by *Hill* against *Olmstead.* The general issue was pleaded; and by consent the evidence was submitted to the court, instead of the jury, and a judgment was rendered for the plaintiff below. There was a motion for a new trial on the part of the defendant, which was overruled; whereupon he excepted to the opinion of the court, and incorporated into the record, the whole of the evidence that was given upon the trial.

The testimony was that Hill had purchased a parcel of goods with his own money, and employed Olmstead to superintend the store and sell them out, and agreed that he should have as a compensation for his services and attention to the business one third of the profits. In the goods themselves Olmstead had no interest, he had advanced no part of the capital, and was not to be responsible for any losses which the concern might sustain. It was also in evidence that Olmstead

Olmstead *against* Hill.

controlled and managed the business of the store, and embarked in speculations on the firm account whenever an opportunity offered, and that it was the general understanding of the neighborhood that defendant and plaintiff were partners. After most of the goods had been sold, Olmstead voluntarily left the store, and turned over a number of notes and accounts to Hill's clerk to collect. The suit was instituted by Hill to recover the price of goods made use of by Olmstead while superintending the store, on his individual account. The correctness of the charges was admitted upon the trial. But it was insisted that the facts disclosed in evidence proved they were partners, and that consequently no recovery could be had in an action at law.

The motion for a new trial was sworn to, and stated the grounds to be, first, that the finding was without, and contrary to, evidence; and second, that since the trial he had discovered new and important evidence of which he had no knowledge until after the trial, that there was no other witness by whom he could have proven the same facts, that he was informed by Robert S. Gibson that a large portion of the goods sold by him (Olmstead) at the store, were purchased in New-Orleans, and marked and forwarded in Olmstead's name; that he was satisfied that he could establish those facts by Gibson, and that he could, and would, if allowed a new trial, have the benefit of, and produce this testimony.

WALKER & SCOTT, for plaintiff in error:

One partner cannot sue another in relation to partnership accounts. See 1 *Chit. Plead. p.* 12, 26; 12 *J. R.* 401; 14 *J. R.* 318; *Gow on Partnership*.

The only other point involved is were they partners. The defendant had sole charge of the goods, engaged in speculation for the benefit of the firm, the books were kept by them as partners. The clerks understood them to be partners, and it was the common understanding that they were partners. Lord ELLENBOROUGH decided in the case of *Dry vs. Boswell*, 1 *Camp.* 329, that where two agreed to share the profit arising from working a lighter, (the lighter belonging to one of them,) that they were partners. There are some contradictory decisions in the English courts, and a distinction is drawn by them between

one who receives a part of the profits as a compensation for services, and those who are interested in the losses as well as profits. With regard to those decisions, after enumerating them, the learned Judge remarks, " the distinction is to be deplored, and is justly open to the objection of not having been established upon due consideration."

*Collyer, on partnership, p.* 2, defines a partnership as between the parties, thus: " It is a contract between two or more persons to join together their money, goods, labor, and skill, or any, or all of them, with an understanding to divide the profits between them." There is a case in 1 *Mar. Ky. Rep. p.* 181, which is similar in every important feature. There a grocer furnished goods to another in Louisville, who sold them for one third of the profits. It was decided that they were partners.

There is also a case in 13 *Wend.* 425, which it is believed sustains this position.

*Collyer, on Partnership, p.* 8, and *note* 1, under that page, " that an agreement between two to get up a store, one to superintend the business and to receive one third of the profits realized, (*he putting in no stock,*) constitutes a partnership." *Page* 8, the same writer says that to constitute a partnership between the parties themselves there must be a communion of profits between them—a communion of profits *implies* a communion of loss.

It will be recollected that in this case the plaintiff in error engaged in speculations, bought and sold for the benefit of the firm. The keeping of the books in the name of the firm, trading and being recognized by the community generally as partners, not only made them partners as to third persons, but it is strong evidence of a partnership between themselves.

TRAPNALL & COCKE, and PIKE, *Contra:*

The court will perceive that the newly discovered testimony related to a point which had already been controverted and to which evidence was adduced upon the first trial. No principle is better settled than that a new trial will not be granted to admit new testimony which is merely cumulative in its character. " It is against the general rule of law to grant a new trial merely for the discovery of cumulative

facts and circumstances relating to the same matter which was principally controverted upon the former trial. It is the duty of the parties to come prepared upon the principal points, and new trials would be endless if every additional circumstance bearing on the fact in litigation, was a cause for a new trial." *Smith vs. Brush*, 8 *J. R.* 84. In the case of *The People vs. The Superior Court of New-York*, 10 *Wend.* 285, cumulative evidence is defined to be such as tends to support the same fact which was before attempted to be proved; and in the case of *Pike vs. Evans*, 15 *J. R.* 310, a new trial was refused by the court, when the newly discovered evidence was admitted to be material, because it was merely cumulative, and related to facts and circumstances which were principally controverted upon the former trial. See also *Ewing vs. Price*, 3 *J. J. Marshall*, 520; *Daniel vs. Daniel*, 2 *J. J. Marshall*, 52; *Wills vs. Phelps*, 4 *Bibb*, 563.

We readily admit that the agreement between Hill and Olmstead would render them liable to third persons as partners. But we deny that they were partners as between themselves. There are many agreements which will make the parties to them, upon principles of commercial policy, responsible as partners to third persons; but which *inter se* create no such relation. This distinction is clearly taken in the case of *Waugh vs. Carver*, 2 *H. Black.* 238, and rests upon the ground "that he who takes a share of all the profits indefinitely shall, by operation of law, be made liable to losses if losses arise upon the principle that by taking a part of the profits he takes from the creditors a part of that fund which is the proper security to them for the payment of their debts." See also *Ross vs. Drinker*, 2 *Hall*, 415; *Champion vs. Bostwick*, 18 *Wend.* 175; *Jordon vs. Wilkins*, 3 *Wash. C. C. Rep.* 110. But as between the parties to the agreement this rule does not obtain. As to them the court will look to the nature of the contract, and if its stipulations do not constitute them partners in a legal and technical sense, they will not be regarded as standing in that connection. Hence the plaintiff objected to the admission of testimony to show the understanding of the neighborhood upon this subject. We admit such testimony would have been competent in a suit against them at the instance of third persons, who could only know the relation subsisting between them from the char-

acter in which they held themselves out to the world. But, as between themselves, it is not the understanding of others, but their own agreement, which must determine their right. And as Olmstead relied upon the existence of a partnership as his defence at law, he was bound to make good that defence by proving an actually subsisting partnership. In *Chase vs. Barrett,* 4 *Paige,* 148, the court say " to constitute a partnership as between the parties themselves, there must be a joint ownership of the partnership funds according to the intention of the parties, and an agreement, either express or implied, to participate in the profits and losses of the business either rateably or in some other proportion." Partnership is defined by *Kent, 3d vol. Com.* 23, 24, to be a contract of two or more persons to place their money, effects, labor, and skill, or some or all of them in lawful commerce or business, and to divide the profit and bear the loss in certain proportions. The two leading principles of the contract are a common interest in the stock of the company, and a personal responsibility for the partnership engagements." It will be found upon examining the agreement between Hill and Olmstead that it is wanting in some of the most essential features of a partnership as portrayed in the above definitions. There was no joint ownership of the partnership funds, no agreement expressed or implied to participate in the losses of the business. On the contrary, Hill supplied the entire fund and was to be responsible for all the losses. It is true that Kent further states that " if one person advances funds, and another furnishes his personal services or skill in carrying on a trade, and is to share in the profits, it amounts to a partnership;" but this principle is accompanied with the qualification " that his interest in the profits be not intended as a mere substitute for a commission, or in lieu of brokerage, and that he be received into the association as a merchant, and not as an agent. And in page 33 of same volume, he also remarks, " to allow a clerk or agent a portion of the profits of sales as a compensation for labor; or a factor, such a per-centage on the amount of sales, does not render the agent or factor a partner, when it appears to be intended merely as a mode of payment adopted to increase and secure exertion, and when it is not understood to be an interest in the character of profits." The statement of Hill to the witness Gregg, elicited by

Olmstead *against* Hill.

the defendant furnishes the most clear and distinct account of the nature and extent of the connection between Olmstead and himself. This statement is unimpeached. For Dillard does not pretend to know any thing of the agreement actually subsisting between the parties. He merely states his own belief, and that of the neighborhood, while the testimony of the remaining witnesses tends to corroborate and strengthen the account of Hill. From that account, which we are fully authorized to receive as true, it is manifest that Olmstead was not received into the association as a *merchant*, but as *an agent only*. He was not regarded as a "regular partner," and a share in the profits was given him "merely as a compensation for his time and trouble, and received in the light of wages." It was a mode of payment adopted to secure an increase of exertion, and was not understood to be an interest in the profits in the character of profits. The facts in this case are strikingly alike to those in the case of *Hesketh vs. Blanchard, 4 East,* 144. There A., having neither money or credit, offered to B. that if he would order with him certain goods to be shipped upon an adventure, if any profit should arise from them, B. should have half for his trouble. B. lent his credit on this contract, and ordered the goods on his joint account, which were furnished accordingly, and afterwards paid for by B. alone, who brought an action of assumpsit to recover back such payment of A., who had not accounted to him for the profits. And Lord ELLENBOROUGH remarked upon it that "the distinction taken in *Waugh vs. Conner,* applies to this case. *Quoad* third persons, it was a partnership for the plaintiff was to share half the profits. But as between themselves it was only an agreement for so much, as a compensation for the plaintiff's trouble and for lending Roberteau his credit. The case of *Wilkinson vs. Frazier, 4 Esp.* 183, was an action of assumpsit brought by a sailor against the captain of the vessel. "The sailor engaged on a whaling voyage, and was to receive a certain portion of the profits of the voyage, in lieu of wages, when the cargo was sold. It was objected, that as the defendant as well as the plaintiff was to be paid out of the profits of the voyage, they were therefore partners, and as one partner could not maintain this action against another, the action

was not maintainable.   Lord ALVANLEY said he would not non-suit the plaintiff on such an objection: that the plaintiff and other sailors were hired by the defendant and owners to serve on board the ship for wages to be paid to them; and the share was in the nature of wages, unliquidated at the time, but capable of being reduced to a certainty on the sale of the oil, which had taken place, and that he should not therefore consider them as partners, but as entitled to wages to the extent of their proportion in the product of the voyage.

In the case before the court Olmstead had no right whatever to the goods.   They were purchased and paid for by Hill, and belonged exclusively to him, and were we to admit the existence of a partnership from the agreement between them, it is still evident that the partnership would not be in the goods themselves, but merely in the profits which might arise from the sale of them.   And if Olmstead appropriated any part of the goods to his private use, Hill would clearly be entitled to maintain this action to recover back their value. The goods were Hill's private property, placed by him in the care of Olmstead to sell out for a profit, in which he was to share in a certain proportion.   There is no provision in the agreement whereby the firm of Hill and Olmstead, (if any such in fact existed,) was to acquire an interest in the goods beyond what might arise from the profits of the sale.   Olmstead; therefore, in making use of the goods on his private account was appropriating them to a purpose foreign to the partnership agreement, and as the property in the goods was not in the firm, but in Hill individually, he would be responsible for the payment of them to Hill, and not to the firm.

LACY, *Judge*, delivered the opinion of the court:

The doctrine in regard to granting new trials upon the ground of newly discovered testimony, is fully explained and established in the case of *Robins vs. Fowler*, heretofore decided at a previous term of this court.   Indeed the authorities are so numerous and full upon the point, and the reasons and principles upon which they rest, are so obvious and conclusive, that it seems almost impossible to overlook the essential requisites that the law requires to entitle a party to a new

Olmstead *against* Hill.

trial. He must have been guilty of no neglect or laches in preparing his case for trial. It must have been out of his power to procure the newly discovered evidence upon the former trial by due diligence and exertion to obtain it: and he must show to the court that the newly discovered evidence is material and important, by the affidavit of the witness, or by some other legal means; so that the court may judge of its materiality and sufficiency; and it must not be cumulative in its character and consequences. It is the duty of the parties to come prepared upon the principal points; and new trials would be endless, if every additional circumstance bearing upon the facts in litigation were a cause for new trial.

Cumulative evidence is such as tends to support the fact or issue which was before attempted to be proved upon the trial. The newly discovered evidence, in the present instance, does not possess a single requisite which would authorize its introduction; and even if admitted, it would not vary and alter the finding. The defendant below proposes to prove that it is within the knowledge of the witness that a large portion of the goods sold by him at the store of the plaintiff, were purchased in New-Orleans, and forwarded in the name of the defendant. This fact he swears to himself, but he has not substantiated it by the affidavit of the witness; nor has he shown that he used due diligence to procure the testimony on the former trial. If all these requisites were established, still the testimony would be inadmissible, for it is certainly cumulative evidence, because the issue was formed and tried in regard to the partnership of the parties. Again the evidence, if offered, is inadmissible on another ground, because it would not prove, or tend to prove the existence of a partnership. As the defendant relied upon the existence of a partnership in bar of the plaintiff's action, he was bound to prove it affirmatively, as he would any other given fact upon which he rested his defence. Chancellor KENT in the 3d vol. of his Commentaries, pages 23 and 24, has defined a "partnership to be a contract of two or more persons to place their money, effects, labor or skill, or some or all of them in lawful commerce or business, and to divide the profit and bear the loss in certain proportions." The leading principles of such a contract are a common interest in the stock of the company, and a

personal responsibility in the partnership engagements." If one person advances funds, and another puts against it his personal services or skill, for the purpose of carrying on trade, and they are to share the profits between them, this amounts to a partnership, provided he who has an interest in the profits, does not receive his share as a mere substitute for commissions; and is received *in the company as a partner or merchant, and not as a factor or agent.* To give a clerk or agent, a portion of the profits of sales, as a compensation for his labor, on the amount of goods sold, does not constitute the agent or clerk a partner in the business, if it appear that it was intended as a mode of payment adopted for the purpose of increasing diligence and securing exertions. *Chase vs. Barrett,* 4 *Paige,* 148; *Hesketh vs. Blanchard,* 4 *East.* 144; *Wilkinson vs. Frazier,* 4 *Esp.* 183. Upon the principles of commercial policy, an agreement may constitute a partnership as to third persons, when it creates no such relation between the parties themselves. This distinction runs through all the authorities upon the subject, and is based upon the soundest principles of commercial intercourse, and of public policy. A party who receives a share of the profits individually, shall by intendment of law be held liable for losses if any occur, for by taking a part of the profits he withdraws from the creditors a portion of that fund which is the proper security for the payment of these debts. *Waugh vs. Carver,* 2 *H. B.* 328; *Ross vs. Drinker,* 2 *Hall,* 415; *Champion vs. Bostwick,* 18 *Wend.* 176; *Jordon vs Wilkins,* 3 *Wash. C. C. R.* 110. Consequently they who hold themselves out to the world as partners in business or trade, are to be so regarded *quoad* creditors and third persons; and the partnership may be established by any evidence showing that they so hold themselves out to the public, and were so regarded by the trading community. But between themselves, as before laid down, the rule is different; and the agreement or contract alone constitutes them partners, and whether it be by parol or in writing, or whether express or implied, is as capable of being proved as any other fact, and must be established by the same grade or species of evidence. The proof in the case now before us satisfactorily shows that Olmstead was not received by Hill as his *partner or merchant, but merely as his agent and clerk,* whose wages were to be paid out of the profits of the sales of the

Olmstead *against* Hill.

goods. There was no joint ownership of the funds, no agreement to participate and share the profits and losses of the business. The plaintiff below supplied the entire fund, and was alone responsible for the losses. The defendant merely acted as his agent or clerk. And this being the case,. he cannot in any possible point of view be considered as a partner in the business. The judgment of the Circuit Court must therefore be affirmed with costs.