Brugman et al. vs. McGuire et al.

---

BRUGMAN ET AL. VS. MCGUIRE ET AL.

| 32 | 733 |
| 63 | 373 |

1. PARTNERSHIP.

A person who permits himself to be held out as a partner is liable as such, whether in fact a partner or not.

2. PAYMENT: *By note.*

The giving of a promissory note in settlement of an account, does not operate as an absolute payment, unless the parties expressly or impliedly agree to treat it as such.

3. PARTIES: *Joinder.*

Where several persons are sued as upon a joint contract, but the proof shows that only a part of them contracted, the plaintiff may recover against those who are in fact liable.

4. JOINDER OF ACTIONS: *In personam and in rem.*

A plaintiff proceeding *in rem* for the enforcement of a mechanic's lien may also count upon the personal liability of the defendant, and recover *in personam*, though he may fail in establishing the alleged lien.

5. ATTACHMENT: *Judgment against sureties in discharging bond.*

Under the provisions of the Act of November 10th, 1875, a plaintiff in attachment may recover judgment against the sureties in a discharging bond upon the trial of the main cause.

APPEAL from *Pulaski* Circuit Court.

Hon. T. C. PEEK, Special Judge.

*Dodge & Johnson,* for appellant.

*Rose, Kimball,* and *Clark & Williams, contra.*

HARRISON, J.:

This was a suit brought by John McGuire & Bro. against Peter Brugman, Phillip E. Brugman and Dick Brugman, as partners under the name of Peter Brugman & Sons, to recover the sum of $570 on an account for work done and materials furnished by them as machinists upon and for a steam grist mill, and to enforce a mechanic's lien therefor.

The defendants filed separate answers, after which the action was dismissed as to Dick Brugman.

The answers of Peter Brugman and Phillip E. Brugman were substantially alike and may be taken as one.

They denied that any such firm as Peter Brugman & Sons had ever existed; that they have been partners or jointly interested in the mill, or that Peter Brugman had any interest in the same, or any work had been done or materials furnished for him by the plaintiffs, and they denied that either of them owed the debt sued for, but averred that the work was done and materials furnished at the instance and for Phillip E. Brugman alone; and that the debt for the same was paid on the 19th day of June, 1874, by Peter Brugman making and delivering to the plaintiffs his two promissory notes, each for $285, payable with 10 per

cent. interest from date, respectively, in four and six months, which the plaintiffs accepted in payment and discharge of the debt; and they further averred that the mill sought to be charged with the lien was upon the land of Isabella T. Brugman, the wife of said Peter Brugman, and which was her separate property, and the said Phillip E. Brugman, when the work was done and materials furnished, had but a lease thereof, for one year, and which had expired before the suit was brought, and they disclaimed any interest in the mill.

After the suit was commenced, garnishments were sued out against the Life Insurance Company of North America, and the Citizens' Insurance Company of New Jersey, and an indebtedness to Peter Brugman of $871.50 was admitted by the former company, and an indebtedness to Phillip E. Brugman of $712 by the latter company; whereupon the bond of Phillip E. Brugman, with J. E. Geyer and W. Roland as sureties, for the dissolution of the attachment was filed, and the same was discharged.

The jury returned a verdict for the plaintiffs for $623.86, the debt and damages, but found against the lien.

The defendants moved for a new trial; their motion was overruled and judgment for the amount of the verdict was rendered against them and their sureties. The defendants appealed.

The evidence was as follows:

For the plaintiffs:

William McGuire, one of the plaintiffs, and their bookkeeper, testified to the correctness of the charges in the account filed with the complaint. The dealings he said were with his brother and co-plaintiff, and he did not know of his personal knowledge on whose orders the work was done and materials furnished, but he saw both Peter and Phillip E. Brugman frequently at their shop.

William Green testified: That sometime in the spring of 1874, he was asked by Peter Brugman if he knew of an engine and boiler for sale, and he told him where he could buy them. Shortly afterwards Phillip E. Brugman called upon him, and they went to the place, and Philip E. Brugman bought them and employed the witness to haul them to the plaintiff's shop to be repaired, which he did, and after they were repaired, he, at the instance of Philip E. Brugman, hauled them to the mill, on what he supposed was Dr. Peter Brugman's place. He did not see Dr. Brugman when he hauled the engine and boiler to the mill, and Philip E. Brugman seemed to have the entire control of the mill.

Mr. Hughes testified that he was in 1874 sent by the plaintiff, in whose employment he was, to Brugman's mill to repair the machinery. The repairs were made under the directions of Philip E. Brugman, and he did not see Dr. Brugman there.

John McGuire, the other plaintiff, testified:

That both Dr. Peter Brugman and Philip E. Brugman applied to him to do the work and furnish the materials, each, at several and different times, and sometimes one and sometimes the other made payments to him on the account, and he supposed them to be partners in the mill. The job was to be paid for when finished; and, when it was done, he called upon Dr. Brugman and presented the account, which was made out against Philip E. Brugman. He told the witness he was out of money, and could not then pay it. Sometime afterwards he presented the account to him again, when he offered to give the notes. He said to the witness: "I want to give you my notes for that account to keep your brother from dunning me on it. I would rather have the seven years' itch than to have him after me. Let me give you my notes, so that I can tell him it is settled, and he told the witness they could be used in bank and money raised on them.

Witness consented to take the notes, two, each for $285, bearing 10 per cent. interest and at four and six months, but at the time told him, they would not release any one from the debt, and would still hold their mechanic's lien on the mill for it. The notes were accordingly given, and he indorsed on the account a receipt in full of it. That notes were not taken in payment and discharge of the debt, and they afterwards filed their account of the work and materials to secure their lien. That after the notes fell due, he presented them for payment, which was refused, and that neither they nor the account had ever been paid.

The account and the affidavit thereto attached filed in the office of the Circuit Clerk to secure the mechanic's lien, which was made out against "Peter Brugman & Son," was then read, and the plaintiff's produced and offered to surrender to the defendants the notes.

And for the defendants:

The defendant, Philip E. Brugman, testified: That there had been no such firm as "Peter Brugman & Sons;" that the work was done and the materials furnished upon orders given by himself in person and sometimes by his father Dr. Peter Brugman, and that neither Dr. Brugman nor Dick Brugman had any interest in the mill or machinery, and the engine, boiler and machinery was his, the witness' sole and individual property; that the land on which the mill stood belonged to his mother, Mrs. Isabella T. Brugman, from whom he rented the land and mill, and his lease of the same had expired. That sometimes he made the plaintiffs payments on the account in person, and sometimes sent them money by his father. That he directed them to make the account out against himself individually, which was done, and he requested his father to settle it, which his father did by giving the notes mentioned in his answer, and taking the receipt

indorsed upon the account. He considered his debt to the plaintiffs paid by his father's notes, and did not owe them anything.

The mill building, he said, was erected by Dr. Brugman and cost him about $1600. Since the suit had been pending, the mill and machinery had been destroyed by fire, and he, the witness, had received on account of insurance on the building, machinery, stock of goods and cotton, $2200, of which he paid Dr. Brugman on account of his assumption of the debt to the plaintiffs, and other matters, $1600.

That he knew of no property his father owned, out of which the notes could be paid, and he was, when he paid him the insurance money so far as he knew, insolvent.

And Peter Brugman testified: That no partnership ever existed between him and his son Philip E. Brugman, and that the engine and boiler was purchased by Philip E. Brugman alone and for his own use, and that he had never employed the plaintiffs to repair the engine and boiler or to do any work for himself, and they had never furnished him any materials, and that the work was done for, and the materials furnished to Philip E. Brugman alone.

That the land on which the mill was situated was the separate property of his wife, and was rented by her to Philip E. Brugman, who put the engine and boiler in the mill at his own expense, and owned the entire machinery.

He paid the plaintiffs some money on the account, all of which was his own, but did not intend when the account was being made to become liable therefor.

He said that being dunned upon the account, by John McGuire, he told him he had no money, but offered to give him the notes mentioned in his answer, which he consented to accept, and they were accordingly executed, and a receipt was indorsed by McGuire on the account. He had no recollection of McGuire say-

ing he would retain the mechanic's lien, and considered the notes as payment and satisfaction of the account, and that by giving the notes, he alone, which was his intention, became liable for the debt.

The receipt was read, which was as follows :

"Received payment by notes of Peter Brugman, at four and six months, in full of account to date.

JOHN McGUIRE & BRO.

June 19th, 1874."

And the defendants then read a deed of conveyance from Frank T. Vaughan and Myra Vaughan his wife, to Isabella T. Brugman, for the land mentioned in the complaint on which the mill was situated, but which did not convey the same to her as her separate property.

The following instructions given for the plaintiffs were excepted to by the defendants:

*First*—It was not necessary to entitle the plaintiffs to recover, to prove that the defendants were partners or jointly interested in the mill, but if their acts and conduct was such as to induce the plaintiffs to believe them to be partners or jointly interested, and, under that impression and belief so created, the work was done and the materials furnished, both were liable to the plaintiffs therefor, although Peter Brugman was not, and Philip E. Brugman was alone interested in having the work done and materials furnished, and the same was for his sole use and benefit.

*Second*—But if they engaged in the enterprise of building a mill to be owned and jointly run by them for their mutual benefit and profit, that constituted them partners as to all matters connected with the building and running of the mill, and they would be jointly liable for materials furnished and work done, in the carrying out of that common object.

*Third*—That the debt for which the notes were given was not paid and extinguished by the notes of Peter Brugman unless it was the intention and understanding of the parties at the time the same were given, that they were in payment and discharge of it and so received.

"It is undoubted law," says Judge Parsons in his work on partnership, "that one held out as a partner with his own consent is liable as such whether he be a partner in fact or not." Par. on Part., 87, 123; Sto. on Part., sec. 64; *Humphries* v. *McGraw*, 5 Ark., 61; *Olmstead* v. *Hill*, 2 Ib., 346.

The first two instructions were clearly unobjectionable. The third was equally so.

"The giving of his bill of exchange, promissory note, or other negotiable security, by the debtor, only operates as a conditional payment, unless the parties expressly or impliedly agree to consider it as an absolute payment." Sto. on Con., sec. 979; *Carlton* v. *Buckner*, 28 Ark., 66; *Costar* v. *Davies*, 8 Ark., 213; *Sheehy* v. *Mandeville*, 6 Cranch, 264.

But it is contended by the appellants that as the action was upon an alleged joint contract of theirs and Dick Brugman, and there was no evidence whatever tending to prove that Dick Brugman was a party to the contract, the verdict was not sustained by the evidence.

The statute explicitly says: "Judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants." Gantt's Dig., sec. 4701.

We think the plain reasoning of this section is to allow, where several persons are made defendants as upon a joint contract, but the proof shows that only some of them contracted, the plaintiff to recover against those who were in fact liable. *Zink* v. *Attenburg*, 18 How. Pr., 108; *Witherhead* v. *Allen*, 28 Barb., 661; *Claflin* v. *Butterly*, 2 Abb., 446; *Brumskill* v. *James*, 1 Ker., 294.

Brugman et al. vs. McGuire et al.

It is also objected, that the action could not be *in rem* and also *in personam*, and, as the plaintiffs failed in the proof of the lien, there could be no judgment for the debt against the defendants personally.

But it is expressly provided that "in an action on a mortgage or lien, the judgment may be rendered for the sale of the property, and for the recovery of the debt against the defendants personally." Gantt's Dig., sec. 4707, and in sec. 4550 it is provided, also, that several causes of action, which belong to certain classes named, may be united in the same complaint, where each affects all the parties to the action, may be brought in the same county and be prosecuted by the same kind of proceedings, of which classes, claims arising out of contracts express or implied, is first mentioned, and sec. 4553 says all objections to the misjoinder of causes of action shall be deemed waived, if not taken by the defendant before he makes his defense.

The complaint, besides setting out the facts in relation to the mechanic's lien, also alleged such as constituted a cause of action against the defendants personally for their debt, and prayed a personal judgment. *White* v. *Chaffin,* M. S. Op.; *Arkansas Central R. R. Co.* v. *McKay,* 30 Ark., 682.

In the case of *White* v. *Chaffin,* which was a case very similar to the present, there was a judgment *in rem* and also a personal judgment for the debt. The judgment *in rem* condemned more land than is allowed by the statute. The personal judgment was affirmed, and that *in rem* held erroneous only as to the quantity of land ordered to be sold for the satisfaction of the debt.

A remaining objection is that judgment was rendered against the sureties in the bond for the discharge of the attachment. Such judgment against the sureties is expressly authorized and directed by the Act of November 10th, 1875, amendatory of the attachment laws.

Finding no error the judgment of the court below is affirmed.