Reggie CHAVERS, Mark Chavers, and
Chavers Welding & Construction *v.* EPSCO, INC.

02–866 98 S.W.3d 421

Supreme Court of Arkansas
Opinion delivered February 20, 2003

*Lyons, Emerson & Cone, P.L.C.*, by: *Scott Emerson*, for appellants Reggie and Mark Chavers.

*W. Scott Davidson*, for appellee.

JIM HANNAH, Justice. Appellants Reggie Chavers and Mark Chavers appeal a judgment entered against them by the Craighead County Circuit Court. Reggie and Mark argue that the trial court erred in holding them liable for a company debt based upon partnership by estoppel because the proof was vague and insufficient and there was no detrimental reliance on the part of a creditor. We hold that the trial court was not clearly erroneous in finding liability based upon partnership by estoppel. Accordingly, we affirm.

### Facts

Gary Chavers operated Chavers Welding and Construction ("CWC"), a construction and welding business, in Jonesboro. Gary's sons Reggie Chavers and Mark Chavers joined their father in the business after graduating from high school. Gary, Mark, and Reggie maintain that CWC was a sole proprietorship owned by Gary, and that Reggie and Mark served only as CWC employees, not as CWC partners.

In February 1999, CWC entered into an agreement with Epsco, Inc. ("Epsco"), a staffing service, to provide payroll and employee services for CWC. Initially, Epsco collected payments for its services on a weekly basis, but later, Epsco extended credit to CWC. Melton Clegg, President of Epsco, stated that his decision to extend credit to CWC was based, in part, on his belief that CWC was a partnership.

CWC's account with Epsco became delinquent, and Epsco filed a complaint against Gary, Reggie, and Mark, individually, and doing business as CWC, to recover payment for the past due account. Gary discharged a portion of his obligation to Epsco due to his filing for bankruptcy. Epsco sought to recover CWC's remaining debt from Reggie and Mark. After a hearing on March 7, 2002, the trial court issued a letter opinion, finding that Reggie and Mark "represented themselves to [Epsco] as partners in an existing partnership and operated in such a fashion to give creditors in general, and Epsco in particular, the impression that such creditors/potential creditors were doing business with a partnership. . . ." On May 21, 2002, the trial court entered an order stating that Reggie and Mark were partners by estoppel as relates to Epsco. The trial court found that Reggie and Mark were jointly and severally liable for the debt of CWC in the amount of $80,360.92. In addition, the trial court awarded Epsco pre-judgment interest at the rate of six percent, post-judgment interest at the rate of ten percent, and attorney's fees in the amount of $8,036.92.

## Standard of Review

In bench trials, the standard of review on appeal is not whether there is substantial evidence to support the finding of the court, but whether the judge's findings were clearly erroneous or clearly against the preponderance of the evidence. Ark. R. Civ. P. 52(a) (2002); *Reding v. Wagner*, 350 Ark. 322, 86 S.W.3d 386 (2002); *Shelter Mut. Ins. Co. v. Kennedy*, 347 Ark. 184, 60 S.W.3d 458 (2001). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Sharp v. State*, 350 Ark. 529, 88 S.W.3d 348

(2002). Disputed facts and determinations of credibility are within the province of the fact-finder. *Sharp, supra; Pre-Paid Solutions, Inc. v. City of Little Rock*, 343 Ark. 317, 34 S.W.3d 360 (2001).

### Partnership by Estoppel

Arkansas Code Annotated § 4-42-308 (Repl. 2001) [repealed January 1, 2005][1] provides, in pertinent part:

> (1) When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to any one, as a partner in an existing partnership or with one (1) or more persons not actual partners, he is liable to any person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership, and if he has made such representation or consented to its being made in a public manner, he is liable to that person, whether the representation has or has not been made or communicated to that person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to it being made.
>
> (a) When a partnership liability results, he is liable as though he were an actual member of the partnership.

■ ■ We have long recognized the doctrine of partnership by estoppel. In *Olmstead v. Hill*, 2 Ark. 346 (1840), the court stated that

> they who hold themselves out to the world as partners in business or trade, are to be so regarded *quoad* creditors and third persons; and the partnership may be established by any evidence showing that they so hold themselves out to the public, and were so regarded by the trading community.

2 Ark. at 354. Further, we have stated that "[p]artnerships may be proved by circumstantial evidence; and evidence will some times fix a joint liability, where persons are charged as partners, in

---

[1] Pursuant to Acts 1999, No. 1518, § 1205, beginning January 1, 2005, the Uniform Partnership Act (1996), codified at Ark. Code Ann. § 4-46-101 *et seq.* governs all partnerships.

a suit by a third person, when they are not, in fact, partners as between themselves." *Humphries v. McCraw*, 5 Ark. 61, 64-65 (1843).

In *Herman Kahn Co. v. Bowden*, 80 Ark. 23, 96 S.W. 126 (1906), the court noted that

> [a] person who holds himself out as a partner of a firm is estopped to deny such representation, not only as to those as to whom the representation was directly made, but as to all others who had knowledge of such holding out and in reliance thereon sold goods to the firm. . . .

80 Ark. at 30. In addition, "if the party himself puts out the report that he is a partner, he will be liable to all those selling goods to the firm on the faith and credit of such report." *Id.*

When a person holds himself out as a member of partnership, any one dealing with the firm on the faith of such representation is entitled to assume the relation continues until notice of some kind is given of its discontinuance. *Watkins v. Moore*, 178 Ark. 350, 10 S.W.2d 850 (1928); *Gershner v. Scott-Mayer Comm'n Co.*, 93 Ark. 301, 124 S.W. 722 (1910); *Bowden, supra; Brugman v. McGuire*, 32 Ark. 733 (1878).

In *Firestone Tire & Rubber Co. v. Webb*, 207 Ark. 820, 182 S.W.2d 941 (1944), the court wrote:

> It is a thoroughly well-settled rule that persons who are not as between themselves partners, or as between whom there is in fact no legal partnership, may nevertheless become subject to the liabilities of partners, either by holding themselves out as partners to the public and the world generally or to particular individuals, or by knowingly or negligently permitting another person to do so. All persons who hold themselves out, or knowingly permit others to hold them out, to the public as partners, although they are not in partnership, become bound as partners to all who deal with them in their apparent relation.
>
> The liability as a partner of a person who holds himself out as a partner, or permits others to do so, is predicated on the doctrine of estoppel and on the policy of the law seeking to prevent frauds on those who lend their money on the apparent credit of those who are held out as partners. One holding himself out as a part-

ner or knowingly permitting himself to be so held out is estopped from denying liability as a partner to one who has extended credit in reliance thereon, although no partnership has in fact existed.

*Webb*, 207 Ark. at 825 (quoting 40 AM. JUR. 179-80). In *Webb*, the court held that the appellee was estopped from denying that he was a partner when the "appellant showed that it relied on the truth of the financial statement . . . signed by [the appellee] as a partner, and made shipments on the truth of the statement." *Id*. at 824.

In the present case, the trial court cited specific examples of representations made by Reggie and Mark indicating that they were partners of CWC, including correspondence to Epsco, checks written to Epsco, business cards distributed to the public, and credit applications. We will discuss each in turn.

### The Faxed Credit References

Epsco argues that Plaintiff's Exhibit #1, a faxed list of credit references, clearly indicates that Gary was the owner and that Reggie and Mark were partners in the business. The fax lists four credit references, and it includes CWC's contact information. The contact information lists CWC's telephone number, fax number, and federal tax number. The last two lines of the contact information state: "Gary Chavers Owner" and "Reggie Chavers and Mark Chavers Partners."

Kim Baker Adams, an office manager at Epsco, testified that in the beginning of Epsco's relationship with CWC, she told Gary that he needed to fill out a credit application. Adams testified that Gary told her that CWC had its own company credit application already typed up, and that he would fax it to her. Adams testified that Plaintiff's Exhibit #1 was the fax she received from Gary.

Gary testified that he did not know that the list of credit references was faxed to Epsco. In addition, he testified that his signature was not at the bottom of the fax. He testified that his former secretary might have signed his name to the fax; however, he stated that he did not authorize his secretary to sign or fax a list of

credit references to Epsco. Moreover, Gary testified that the first time he saw the list of credit references was at the bench trial.

 This court gives deference to the superior position of the trial judge to determine the credibility of the witnesses and the weight to be accorded their testimony. *Lee v. Daniel*, 350 Ark. 466, 91 S.W.3d 464 (2002); *Pyle v. Sayers*, 344 Ark. 354, 39 S.W.3d 774 (2001). Further, it is within the province of the trier of fact to resolve conflicting testimony. *Lee, supra; Myrick v. Myrick*, 339 Ark. 1, 2 S.W.3d 60 (1999). Though there was a dispute concerning whether Gary faxed the list to Epsco, the trial court found that Epsco received the faxed credit references from CWC and relied on CWC's statement that Reggie and Mark were partners. The trial court's finding is not clearly erroneous.

### The Fax Cover Sheet

 At trial, Epsco introduced Plaintiff's Exhibit #2, a fax cover sheet from "Chavers Construction" to Epsco. The fax cover sheet was dated July 19, 2000. The fax cover sheet contained the address, telephone number, and fax number of the business. Listed under this information was "Gary, Reggie, or Mark Chavers." Epsco argues that Gary, Reggie, and Mark are all listed on the fax cover sheet, and that this indicates that they were holding themselves out to the public as partners of the business. The trial court's finding that the fax cover sheet indicated that Reggie and Mark were holding themselves out as partners of CWC is not clearly erroneous.

### The Epsco Personnel Credit Application

Epsco introduced Plaintiff's Exhibit #9, a personnel credit application, which was received from CWC. Adams testified that the exhibit represented a completed credit application that she received from CWC. The type of business checked on the credit application is "partnership." Adams testified that the application showed the company to be a partnership, and that this information was relied upon in extending credit. Clegg testified that he viewed the credit application which indicated that CWC was a partnership, and that his decision to extend credit to CWC was

based, in part, on his belief that CWC was a partnership. Gary denied filling out the credit application form.

It was within the trial court's discretion to find Adams's and Clegg's testimony more credible than Gary's testimony and to determine that Epsco relied on the statement of partnership on the credit application before extending credit to CWC. *See, e.g., Lee, supra; Myrick, supra.* The trial court's finding concerning the credit application is not clearly erroneous.

## The Checks to Epsco

Epsco argues that Plaintiff's Exhibit #3 and Plaintiff's Exhibit #11, checks written to Epsco showing the CWC account to be in the name of "Gary A. or Reggie J. Chavers," indicates that Reggie was holding himself out to be a partner of CWC. Plaintiff's Exhibit #3 was signed by Gary, and Plaintiff's Exhibit #11 was signed by Reggie. The checks are evidence that Reggie was holding himself out to the public as a partner of CWC, and Epsco could have detrimentally relied on the checks before extending credit to CWC. The trial court was not clearly erroneous in finding that the checks supported a finding of partnership by estoppel.

## The Business Card

Epsco introduced Plaintiff's Exhibit #4, a business card that states "Chavers Welding, Construction & Crane Service." Listed on the card as "owners" are Gary Chavers and Reggie Chavers. Gary testified that the business cards were printed incorrectly, and that Reggie's name should not have been included as an owner. He also testified that some of the cards might have been handed out, and that it was possible that he might have given one of the cards to a business listed as one of CWC's credit references on Plaintiff's Exhibit #1.

The business card listing Reggie as an owner indicates that Reggie was holding himself out as a partner. As we stated in *Watkins, supra,* when a person holds himself out as a member of partnership, any one dealing with the firm on the faith of such representation is entitled to assume the relation continues until

notice of some kind is given of its discontinuance. There is no indication that Reggie ever informed any person who received a business card that the business relationship listed on the card was incorrect or had been discontinued. The trial court's finding concerning the business card is not clearly erroneous.

## The Dealership Application

Epsco introduced Plaintiff's Exhibit #5, an application form from "Chavers Welding," signed by Reggie, seeking a dealership from Sukup Manufacturing. The application, dated January 23, 1997, lists "Gary & Reggie Chavers" as owners of "Chavers Welding." The application is signed by Reggie. Reggie admits that he signed the dealership application and represented that he was an owner of "Chavers Welding," but he dismisses his statement of ownership as mere "puffery" on his part. Epsco argues that instead, the application shows that Reggie was holding himself out to the public as being a partner. The trial court's determination that Reggie's dealership application supports a finding of partnership by estoppel is not clearly erroneous.

In sum, the trial court was not clearly erroneous in finding that Reggie and Mark held themselves out as partners of CWC and that Epsco detrimentally relied on the existence of the partnership before extending credit to CWC. The appellants argue that even if we find Reggie liable based upon partnership by estoppel, there was scant proof of Mark being liable based upon partnership by estoppel. We disagree. We are aware that some examples of holding out cited in the trial court's order pertain only to Reggie. However, the representations attributed to both Reggie and Mark are sufficient proof to support the trial court's finding that both Reggie and Mark are estopped from denying liability to Epsco.

Affirmed.