WARREN *v.* WHEATLEY.

5-2038                                                331 S. W. 2d 843

Opinion delivered February 15, 1960.

*Richard W. Hobbs,* for appellant.

*R. Julian Glover, Wooton, Land & Matthews, Earl J. Lane* and *Wood, Chesnutt & Smith,* for appellee.

Jim Johnson, Associate Justice. This is a taxpayer's suit. The action was brought by appellant, H. C. (Dusty) Warren, County Judge of Garland County, in his individual capacity as taxpayer of Garland County, against the Board of Governors of the Ouachita General Hospital, an institution owned and operated by Garland County, and against Dr. George C. Coffey, to rescind the purchase by Ouachita General Hospital of a lot adjoining the hospital from Dr. George C. Coffey.

It was stipulated by the parties that there was no fraud or collusion in the purchase of the lot for the use of the hospital and that the lot was worth the $15,000 purchase price, or more.

Appellant alleged that the Ouachita General Hospital was not a legal entity and could not purchase real property; that Garland County could not legally purchase this property in the manner in which it was purchased; that the County Court did not approve the purchase of the property; that a specific appropriation of the Garland County Quorum Court was required for this purpose and that none was made; and that a portion of the funds expended for the purchase of the property was procured from monies specifically appropriated by the Quorum Court of Garland County for care of charity patients and for operation and maintenance of the hospital in violation of law.

As a separate cause of action against appellee, Hill A. Wheatley, Chairman of the Board of Governors of

Ouachita General Hospital, appellant alleged that appellee, Hill A. Wheatley, had taken assignment from the seller, appellee, Dr. George C. Coffey, of a $10,000 note for the balance of the purchase price and had profited to the extent of $100 interest on the said note at the time it was paid, in violation of his duties as a member of the Board of Governors of the hospital.

Trial of the action in the Garland Chancery Court, in conjunction with another case involving this appellant and one of the appellees, resulted in dismissal of appellant's complaint for want of equity and this appeal followed.

Appellees alleged that the purchase of the lot for the use of the hospital was necessary for the efficient operation of the hospital; that the funds for the purchase of the lot where procured from cash revenues of the hospital from paying patients not subject to appropriation by the Quorum Court of Garland County; that the conveyance of the lot to the Ouachita General Hospital was, in effect, a conveyance to Garland County because the hospital was wholly owned by Garland County; that the purchase of the lot was approved by J. M. Lowery, County Judge of Garland County, at the time of the purchase; and that the purchase of the hospital's note for value by appellee, Hill A. Wheatley, and his receipt of the sum of $100 interest on the note was not a violation of his duties and obligations as a member of the Board of Governors of the hospital.

From the record on trial *de novo* we find that it is undisputed that the purchase of the lot for the use of the hospital was necessary for the efficient operation of the hospital. The Board should be commended for its interest in the welfare of the people of Garland County as evidenced by providing them this additional necessary facility at no expense to the taxpayer. The record reflects that the funds for the purchase of the lot were procured from cash revenues of the hospital from paying patients and therefore not subject to appropriation by the Quorum Court of the county. It is true that tax funds and funds from paying patients are mingled in the

same bank account and that all payments are made from this common account. Even though we believe the better practice to be the establishment of a separate bank account for the public and private funds, we cannot say from this record that tax money was used in the purchase of the lot. The evidence is undisputed that the hospital's expenses for authorized purposes regularly exceed the Quorum Court's appropriation.

The proof shows that from the inception of the hospital the expenditures of the hospital for care of charity patients consistently exceeded the appropriations for the care of charity patients both from Garland County and from the City of Hot Springs, and that during the six month period ending December 31, 1958, the total receipts from the city and county for charity patients were $17,000 and the expenditures for charity patients were $27,859.63. Unrestricted cash funds of the hospital made up this deficit. The proof further shows that during this six month period the hospital received $13,500 from the one mill maintenance and operation tax and that total operating expenses were $222,202.54, exclusive of the purchase of the lot. This deficit was also made up from unrestricted cash funds of the hospital received from paying patients and other sources.

It is obvious, therefore, that the funds for the purchase of the lot did not come from monies appropriated for other specific purposes by the Quorum Court of Garland County.

Appellant's argument on this point is primarily based on the fact that all monies from every source, including the restricted tax monies, were placed in one general bank account for convenience in accounting and administration of the affairs of the hospital. The hospital's accountant testified that separate ledger sheets were kept for the various funds, including the charity appropriations and the one mill maintenance tax, and that these funds were segregated on the books of the hospital. The hospital Administrator testified that on the day before the final payment for the lot was made, the hospital bank account amounted to $35,832.32, and

that on the day the final payment of $10,000 was made, the balance in the bank account after this payment and after deposit of a check for $13,500 for one mill maintenance tax monies was $26,127. The records clearly reflect, therefore, that no part of the one mill maintenance tax or the charity appropriations was used by the hospital in the purchase of the lot.

Since the members of the Board of Governors are trustees of the funds appropriated for the Ouachita General Hospital, and since the record reveals that at no time here involved did the common bank account fall below the amount contributed to the hospital from public sources, the money remaining will be deemed to have included the tax money. See: *Chambers, Adm.* v. *Williams, Adm.,* 199 Ark. 40, 132 S. W. 2d 654; *Powell* v. *Missouri & Ark. Land & Mining Co.,* 99 Ark. 553, 139 S. W. 299; Restatement Trusts 2d, Section 202 J, pages 451 and 452.

Appellant argues, and very forcefully so, that the Chancery Court erred in holding that the Ouachita General Hospital was a legal entity and could take title to real property. It was admitted by the pleadings and stipulations entered into between counsel that the Ouachita General Hospital was not a legal entity. Of course, we agree with appellant that the rule that before a grantee can take title to real property the grantee must be a legal entity is so basic that no citations are necessary. However, in this case the record reveals that the Ouachita General Hospital is wholly owned and operated by Garland County. That appellee, Dr. Coffey, did not prepare the deed to the Ouachita General Hospital. He did not have it prepared or have his attorney approve it. He relied solely upon the Board of Governors and the then County Judge J. M. Lowery as to the manner in which the conveyance was made and the transaction handled and as to the validity thereof. That twice during the course of the trial a correction deed from Dr. Coffey to Garland County was offered to appellant, H. C. Warren, County Judge of Garland County, and these offers were refused. Based upon this state of the record rela-

tive to the title to the property here in question, we are of the view that the offer of the correction deed should have been accepted and now should be accepted by the County Judge on behalf of the county. There can be no doubt from this record that the county, from the date of the purchase of this property, has held the equitable title while the legal title remained in Dr. Coffey in trust for the county. This transaction created an implied trust. Such trusts are those which are deducible from the transaction as a matter of clear intention but not found in the words of the parties or which are superinduced upon the transaction by operation of law as a matter of equity, independent of parties' particular intention. *Hunt* v. *Hunt*, 202 Ark. 130, 149 S. W. 2d 930.

The remaining question is whether the appellee, Hill A. Wheatley, indirectly transacted business for profit with the Ouachita General Hospital while acting as a public officer and chairman of the hospital's Board of Governors. The appellant argues that Wheatley violated his duties and obligations as a member of the Board of Governors of the hospital because he took an assignment of the hospital's note to Dr. George C. Coffey for the balance of the purchase price of the lot and received payment in full of the note plus $100 interest due thereon.

The proof shows that Hill A. Wheatley did not enter into a contract with the hospital Board in connection with the purchase of the lot. Mr. Wheatley, in his private capacity, purchased a note bearing interest at 6 per cent per annum secured by a lien on real property. The note was paid and he received the interest called for under the note. Mr. Wheatley's contractual relations were with Dr. Coffey and not with the hospital Board.

There can be no question but that Mr. Wheatley's transaction with Dr. Coffey placed him in a position of doing indirectly that which he could not do directly, *i. e.,* do business with the hospital. He assumed a position in which his personal interest, as the holder of the note, might conflict with his fiduciary duty as a member of the Board of Governors. There was, therefore, a breach of trust. The exact situation is discussed in **Restatement**

of Trusts 2d, § 170, comment *i*: "If the trust estate includes property which is subject to an encumbrance, the trustee violates his duty to the beneficiary if he purchases the encumbrance for himself individually."

In these circumstances the fiduciary cannot make a profit from the transaction. If, for example, he has bought the encumbrance at a discount he cannot recover its face value from the trust estate, for by doing so he would realize a profit. But the receipt of simple interest, at a rate not shown to be excessive, is not regarded as a profit to the fiduciary. The rule is stated in the Restatement, *supra,* § 206, comment *h*: "If he [a trustee] purchases the encumbrance for less than its face value he cannot enforce it against the trust estate for its full face value, but he is entitled only to receive the amount which he paid for it *with interest thereon*" (our italics).

The rule was applied in *Trimble* v. *James,* 40 Ark. 393, where an administrator had saved the estate by purchasing claims at a discount, though he was compelled to borrow money at ruinous rates of interest in order to do so. We held that he was entitled to recover his actual outlay only, with interest, saying: "The administrator is entitled only to actual advances, with simple interest at six per cent till repayment, without intervening rests." It follows that Mr. Wheatley is entitled to retain the $100 which he received as interest, as it represents only simple interest at a rate not shown or suggested to be excessive.

From what we have said above, the decree of the Chancellor is modified only to the extent indicated and affirmed, and the cause is remanded with directions to enter orders consistent with this opinion.