Jackie BERRY, as Administrator of the Estate of Toni Berry,
Deceased *v.* SALINE MEMORIAL HOSPITAL; and Terry
Whittington, Administrator of Saline Memorial Hospital

95-144 907 S.W.2d 736

Supreme Court of Arkansas
Opinion delivered October 23, 1995
[Petition for rehearing denied November 20, 1995.]

*Boswell, Tucker & Brewster*, by: *Ted Boswell, Clark S. Brewster*, and *John T. Holleman*, for appellant.

No response.

ROBERT H. DUDLEY, JUSTICE. This is an appeal from an order disqualifying a law firm from participating in a case. We affirm the disqualification order. The facts viewed in the light most favorable to appellee are as follows. Clark Brewster, a member of the law firm of Boswell, Tucker & Brewster, was a member of the Board of Governors of the Saline Memorial Hospital from July 1, 1989, to June 30, 1992. During this period, Brewster, as a member of the board, was privy to confidential and privileged information about the hospital's quality assurance activities and the peer reviews conducted by the medical staff. He additionally served as Chairman of the Joint Conference Committee, a committee composed of three members of the board and three members of the medical staff. This committee relayed concerns of the medical staff to the board about the quality assurance programs. This information was not known to the public and was disclosed to Brewster because of his fiduciary relationship to the hospital. He was not employed as the hospital's attorney, but he was asked questions by board members because of his profession.

On July 25, 1992, or twenty-five days after the attorney's term on the board ended, Toni Berry underwent emergency surgery at the Saline Memorial Hospital and, lamentably, died the next

afternoon. Shortly after her death, her widower, Jackie Berry, employed Ted Boswell, senior partner in the firm of Boswell, Tucker & Brewster, to investigate a possible negligence action against the hospital. Ten months later the Boswell law firm filed a negligence action on behalf of Toni Berry's estate against St. Paul Fire & Marine Insurance Company, the insurer of Saline Memorial Hospital, which is a county-owned hospital. *See* Ark. Code Ann. § 23-79-210 (Repl. 1992). The gravamen of the complaint was that the hospital and certain of its employees committed medical malpractice. *See Saline Memorial Hosp.* v. *Berry*, 321 Ark. 588, 906 S.W.2d 297 (1995).

■ On November 15, 1994, the Boswell firm requested numerous records from the hospital under the Arkansas Freedom of Information Act, Ark. Code Ann. §§ 25-19-101 to -107 (Repl. 1992 & Supp. 1995). The FOIA at times provides greater disclosure than do the discovery procedures afforded by the Arkansas Rules of Civil Procedure. *Baxter County Newspapers* v. *Baxter Gen. Hosp. Staff*, 273 Ark. 511, 622 S.W.2d 495 (1981). Among the many requested records were "records used by the nursing or hospital administration to determine patient acuity levels"; "records of the employee-to-patient ratio reports from 1991, 1992, and 1993"; and "records of the employee-per-occupied-bed reports for 1990, 1991, 1992, and 1993." The hospital complied with most of the requests, but refused to release statements taken from witnesses as part of a quality assurance or peer review proceeding. In its response to the Boswell firm's request, the hospital replied that the quality assurance and peer review records:

> are specifically excluded from disclosure and are absolutely privileged communications pursuant to Arkansas statutes. These would be the only such records in the hospital's possession. Those made and kept by St. Paul or this [law] firm [Friday, Eldredge & Clark] and are not public records.

The Estate of Toni Berry then filed this separate suit under the FOIA and, among other things, requested the circuit court to order the hospital to disclose all records denied "on any alleged quality assurance privilege. . . ."

The Hospital filed a motion seeking to disqualify the Boswell firm from representing the estate in this FOIA suit on the following basis:

> The confidential information gathered by Clark Brewster while serving on the hospital's Board and the decisions related to the operation of the hospital are directly at issue in the present lawsuit. The representation of the Plaintiff in an action directly adverse to the interests of the hospital is improper, presents an unavoidable conflict of interest and gives the appearance of impropriety that undermines the public's perception of the legal profession and defeats the public policy principles against such actions.
>
> . . .
>
> [He] was in a fiduciary relationship with Saline Memorial Hospital and continues to owe a duty of loyalty which will be breached if allowed to represent interests adverse to those of the hospital.

The trial court ruled that the Boswell law firm was disqualified because:

> [Clark Brewster's] membership on the board of Governors of Saline Memorial Hospital, at the time Quality Assurance and Peer Review policies and procedures were approved and adopted by the board, is a matter related to the issues in the pending FOIA action. Mr. Brewster's law firm represents interests directly adverse to the hospital which will necessarily involve issues related to the very policies and procedures which Mr. Brewster approved and implemented as a member of the Board.

The Boswell firm appeals from the ruling.

■ Appellant first contends the trial court erred in disqualifying the law firm because the firm was not in an attorney-client relationship with the hospital. We could summarily dispose of the argument by stating that the trial court did not rule that an attorney-client relationship existed. Even so, we answer in more detail. The trial court ruled that a conflict of interest existed between the attorney and the hospital, and that ruling was correct. Rule 1.7(b) of The Model Rules of Professional Conduct provides that a lawyer "shall not represent a client if the representation of that client may be materially limited by the lawyers's responsibility to another client or *to a third person*," unless the client or the third person consents. Model Rule 1.10

states that, while lawyers are associated in a firm, "none of them shall knowingly represent a client when any of them practicing alone would be prohibited from doing so by Rule 1.7." The Comment to Rule 1.7 discusses several possible conflicting relationships such as the business interests of the lawyer and membership on a board of directors.

■■ A member of a hospital's board of directors holds a fiduciary relationship with the hospital. *Warren* v. *Wheatley*, 231 Ark. 707, 331 S.W.2d 843 (1960). One who is in such a relationship may not assume a position in which his personal interest might conflict with his fiduciary duty as a member of the board. *Id.* at 712-13, 331 S.W.2d at 847. When a lawyer is on the board of a hospital, the lawyer owes a fiduciary duty to the hospital, and the lawyer should not take any action that conflicts with that duty, such as filing a suit against the hospital. After the lawyer's term on the board ends, the lawyer should not take any action to the detriment of the hospital when that action is based upon confidential information the attorney gained during the fiduciary relationship.

■■ The holding in this case must be read in context of this case only. The Model Rules of Professional Conduct are not really designed for disqualification trials; rather, they are designed for regulating conduct through the Committee on Professional Responsibility. The rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the Committee on Professional Conduct, does not imply that an antagonist in a collateral proceeding even has standing to seek enforcement of a rule. *See* The Preamble to the Model Rules of Professional Conduct. In addition, in this case the trial court's ruling on disqualification does not conflict with the Arkansas Freedom of Information Act. We can envision situations where a disqualification ruling might present a conflict with the FOIA, and a weighing of those conflicts then would be required.

■ Appellant next argues that any materials reviewed by Brewster, and all actions taken by him as a member of the board, were subject to public scrutiny under the FOIA; therefore, there was no breach of confidentiality. The argument is one that is based upon Mr. Brewster's recollection of the facts. It fails because

we must view the facts, and all reasonable inferences from them, in the light most favorable to appellee. We do not reweigh the evidence, we only determine whether the trial court's finding was clearly against the preponderance of the evidence. *Riddick* v. *Streett*, 313 Ark. 706, 858 S.W.2d 62 (1993). In such a review it is permissible to consider only testimony that supports the finding. *Griffin* v. *Woodall*, 319 Ark. 383, 892 S.W.2d 451 (1995).

■ Contrary to Mr. Brewster's recollection, there was proof from another member of the board, Max Blake, that information was supplied to Mr. Brewster during his tenure on the board that related to quality assurance and peer review and this information was not public information. Moreover, one of the hospital's responses to the FOIA request, which prompted this FOIA suit, was that "statements taken from witnesses as part of a Quality Assurance or Peer Review proceeding are specifically excluded from disclosure and are absolutely privileged communications pursuant to Arkansas statues." Appellant does not deny that he seeks records related to quality assurance and peer review. Indeed, one of the issues to be decided by the circuit court when the merits of this FOIA case are reached is whether peer review and quality assurance records are excluded from the FOIA. We observe, without deciding the issue and without indicating how the circuit court should rule when it reaches the merits, that this is a valid issue. The FOIA provides that all records of county hospitals are to be open to the public "except as otherwise specifically provided by this section or by law. . . ." Ark. Code Ann. § 25-19-105(a) (Supp. 1995). One of the exceptions provided "by this section" is for "medical records." Ark. Code Ann. § 25-19-105(b)(2). Another statute, Ark. Code Ann. § 16-46-105 (Repl. 1994), provides that peer review and quality assurance records "shall not be subject to discovery or admissible in any legal proceeding and shall be absolutely privileged communications." *Id.* § 16-46-105(a). *See also Baxter County Newspapers*, 273 Ark. at 513, 622 S.W.2d at 496.

■ Regardless of the ultimate ruling on the merits of the issue, the only ruling made by the trial court that is now on appeal is that:

> [Brewster's] membership on the Board . . . at the time Quality Assurance and Peer Review policies and proce-

dures were approved and adopted by the board is a matter related to the issues in the pending FOIA action. Mr. Brewster's law firm represents interests directly adverse to the hospital which will necessarily involve issues related to the very policies and procedures which Mr. Brewster approved and implemented as a member of the board.

The ruling was not clearly erroneous.

 Appellant's final assignment is that the trial court erred because there was no appearance of impropriety or olfactory offense sufficient to warrant disqualification of counsel. The argument is without merit. Some of the Model Rules of Professional Conduct are imperatives, cast in the terms "shall" or "shall not." These rules define proper conduct for purposes of professional discipline. Others, generally cast in the term "may," are permissive and define areas under the rules in which the lawyer has professional discretion. *See* "Scope" of Model Rules of Professional Conduct. However, Rule 1.7, the primary rule at issue in this case, is cast in imperative terms. It provides that a lawyer "*shall not* represent a client if the representation of that client may be materially limited by the lawyer's responsibility to . . . a third person." (Emphasis added.) A member of the law firm held a fiduciary relationship with the hospital, and the trial court ruled that there was a substantial relationship between the lawyer's responsibilities as a result of the fiduciary relationship and the information sought in the FOIA petition. Since the Model Rule is cast in imperative terms, the trial court did not abuse its discretion in finding a conflict of interest and disqualifying the law firm retained by appellant.

As a sub-point, appellant asks us to reconsider our position on the "appearance of impropriety" standard, as we are only one of three states retaining that standard. *See* David Ivers, Note, *Prohibition Against Appearance of Impropriety Retained Under Model Rules of Professional Conduct*, 13 U. Ark. Little Rock L.J. 271 (1991). We have recently used the standard in another disqualification case, *see Saline Memorial Hosp.* v. *Jackie L. Berry*, 321 Ark. 588, 906 S.W.2d 297 (1995), and we continue to think that it is appropriate in disqualification cases.

Affirmed.