Robert A. NORMAN *v.* Josephine L. NORMAN

97-759                                   970 S.W.2d 270

Supreme Court of Arkansas
Opinion delivered June 18, 1998
[Order denying Motion for Clarification July 16, 1998.]

*T.B. Patterson, Jr., P.A.*, for appellants.

*Bachelor, Newell & Oliver*, by: *C. Burt Newell*, for appellee.

RAY THORNTON, Justice. This action arose in September 1995, when appellee Josephine Norman, by her attorney C. Burt Newell, filed a petition to enforce an alimony provision contained in a 1978 divorce decree dissolving the marriage between herself and appellant Robert Norman. Shortly after appellee filed her petition, Mr. Norman moved to disqualify Mr. Newell and the firm of Bachelor, Newell & Oliver, from representing Ms. Norman, alleging a conflict of interest because Latt Bachelor, a current partner of Mr. Newell, was also a former associate of George M. Callahan, who had represented Mr. Norman during the divorce proceeding. Mr. Norman asserted that Mr. Bachelor would be prohibited from representing Ms. Norman because the current litigation involved the same matter in which Mr. Bachelor's former firm had represented him, and he had not consented to the representation. He alleged further that Mr. Newell was also prohibited from representing Ms. Norman under the rule of imputed disqualification.

The 1978 divorce decree incorporated a property-settlement agreement approved by Mr. Callahan, as attorney for Mr. Norman. The settlement agreement included the following provision for alimony: "Husband shall pay to Wife for her support and maintenance, the sum of $3,600.00 per year or the sum of 22% of his gross income, whichever is greater . . . . Husband covenants and agrees to annually provide wife with such documentation as may be necessary to evidence his income." In her petition, Ms. Norman alleged that Mr. Norman had not provided her with documentation of his income since the divorce, and she requested that the court compel Mr. Norman to provide proof of his income in order to determine whether there was an arrearage.

On January 19, 1996, the chancery court held a hearing and denied the motion to disqualify appellee's counsel. The court ruled that it should not disqualify an attorney or his firm except on a basis which would mandate a mistrial, but should instead defer to the individual lawyer to determine his conflicts and ethical duties in accordance with his judgment.

The case proceeded to trial where, upon the conclusion of the testimony and evidence, the chancery court found that Mr. Norman was in arrearage in the amount of $14,260.33. The court also awarded attorney's fees plus court costs for a total judgment in favor of Ms. Norman in the amount of $15,716.36.

On appeal to this court appellant contends that the chancery court erred in refusing to disqualify counsel for appellee and in refusing to allow parol evidence as to whether there is a latent ambiguity surrounding the term "gross income," contained in the property settlement agreement. Appellant also contends that the chancery court erred in its computation of "gross income," in the proper application of social security benefits, and in other judgments that the court entered. We agree with appellant's first point and reverse and remand for a new trial.

We first address the chancery court's ruling on the motion for disqualification. The record reflects that at the hearing on the motion to disqualify, Mr. Newell stipulated that during the time his current partner, Mr. Bachelor, was a partner with Mr. Callahan, no special security measures were employed to restrict access

to the firm's files and that when a case was closed, the case file was moved to a common area where all the attorneys' files were kept. The record further reveals that before the formation of the law firm of Bachelor, Newell & Oliver, in June 1994, Mr. Newell himself was associated with Mr. Callahan. However, Mr. Newell argued that the Rules of Professional Conduct were irrelevant because the issue before the court simply concerned the interpretation and enforcement of a written provision of the divorce decree and property-settlement agreement, entered into over seventeen years ago, when he was still in college. Mr. Newell therefore contended that the instant action did not constitute the same matter as the initial divorce and property settlement. He further argued that even if confidential information existed, such information was irrelevant and could not be presented because the statute of limitations precluded enforcement of the provision for more that five years preceding the date appellee filed her petition. Mr. Newell also asserted that the parol-evidence rule would bar the introduction of testimony as to what the parties or the attorneys meant by the term "gross income." He thus concluded that there was no risk of disclosing confidential information.

After hearing the arguments of counsel, the chancery court denied the motion to disqualify. The chancellor explained his ruling in part as follows:

> I have always taken the approach that unless a violation of the canons of the Code of Professional Responsibility and/or an alleged violation, rises to the level that it would constitute a mistrial, that questions of ethics are questions for the attorneys and not for the Court. I'm not here to give you an advisory opinion about ethical questions; I'm not here to suggest or — I mean I can off the — you know, I would, if somebody asked off the record, but as far as my purpose as judge, ethical questions are your decisions, not my decisions, unless they raise [sic] to the level of creating a mistrial. And it is for that reason that this motion will be denied.

Mr. Norman filed a motion for reconsideration asserting that the deference of the court to the judgment and discretion of opposing counsel did not fulfill the court's responsibility to supervise the conduct of attorneys and to protect litigants before the

court. The chancery court denied the motion for reconsideration and clarified its ruling, stating in part that:

> [v]iolations of the Code or allegations of such are administrative, not judicial. There exists a forum in which alleged violations are dealt with, investigated and resolved. Far from an abdication of responsibility is a recognition of the separate and distinct duties of the Court and the Committee on Professional Ethics, and the ability of each to implement sanctions. One could contrast contempt with revocation of one's license to appreciate the distinction. Further, one could review the appellate process from the Committee's decision to gain a perspective on who in the first instance has been vested authority for alleged ethical violations . . . . The Court, unless as the Order provides, leaves matters of conscience to those so bound unless it affects the trial process, the example used was to create a mistrial.

On appeal, appellant maintains that the chancery court erred in finding that, unless a violation or alleged violation of the Rules of Professional Responsibility rises to the level of constituting a mistrial or otherwise affects the trial process, disqualification is not required. He also contends that the chancery court had a duty to disqualify Mr. Newell under the circumstances of this case. We agree.

In *Berry v. Saline Memorial Hosp.*, 322 Ark. 182, 907 S.W.2d 736 (1995), a case involving the disqualification of a law firm, we explained that:

> The Model Rules of Professional Conduct are not really designed for disqualification trials; rather, they are designed for regulating conduct through the Committee on Professional Responsibility. The rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the Committee on Professional Conduct, does not imply that an antagonist in a collateral proceeding even has standing to seek enforcement of a rule.

*Id.* at 187, 907 S.W.2d at 739. Nevertheless, we affirmed the chancery court's decision to disqualify appellant's counsel on the basis of a conflict of interest under Model Rules 1.7(b) and 1.10. *Id.* at 186-87, 189, 907 S.W.2d at 739-40.

We have also applied the Model Rules to determine whether an attorney should be disqualified because of a conflict of interest on other occasions. *See Saline Memorial Hosp. v. Berry*, 321 Ark. 588, 906 S.W.2d 297 (1995) (noting that "primary reference in any modern day disqualification case is to Rule 1.7," but concluding that disqualification was not required under the circumstances presented); *Purtle v. McAdams*, 317 Ark. 499, 879 S.W.2d 401 (1994) (citing Rule 1.7 of the Model Rules and concluding that the chancery court was correct in disqualifying attorney); *Burnett v. Morgan,* 303 Ark. 150, 794 S.W.2d 145 (1990) (determining that conflict of interest existed under Rules 1.9 and 1.10 and under appearance-of-impropriety standard requiring disqualification); *First American Carriers, Inc. v. Kroger*, 302 Ark. 86, 787 S.W.2d 669 (1990) (concluding that the violation of Rule 1.9 of the Model Rules and the "appearance of impropriety" required disqualification of firm).

■ These cases demonstrate that the Rules of Professional Conduct are applicable in disqualification proceedings. Indeed, "courts have the power, as well as the duty and responsibility, to disqualify counsel to act in the proceedings, where he is guilty of conduct which is unprofessional or otherwise improper." 7 C.J.S. *Attorney & Client* § 58 (1980). Accordingly, by finding that it should not disqualify an attorney except on a basis that would mandate a mistrial, but that it should instead defer to the individual attorney to decide whether a conflict existed in accordance with the attorney's own judgment, the chancery court erred.

■ ■ Although the chancery court entered a final order denying the motion to disqualify, it is clear that the court did not properly consider whether, under the facts of this case, counsel for appellee should be disqualified. We could remand the case for a proper determination of the conflict-of-interest issue. However, it is well settled that we have the power to hear chancery cases *de novo*, and we have said that we do not remand chancery cases when the facts have been developed fully in the record before us, as it would be pointless to remand for further evaluation. *Lynch v. Brunner*, 294 Ark. 515, 522, 745 S.W.2d 115, 119 (1988) (citing *Potter v. Easley*, 288 Ark. 133, 703 S.W.2d 442 (1986)). The facts with respect to this issue are developed fully in the record; there-

fore, it remains for us to decide whether disqualification was warranted.

Appellant asserts that Mr. Newell's representation of Ms. Norman was a conflict of interest under Rules 1.9 and 1.10 of the Model Rules of Professional Conduct and that it also created the "appearance of impropriety."

Rule 1.9(b) of the Model Rules provides:

> A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client: (1) whose interests are materially adverse to that person; and (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client consents after consultation.

Rule 1.10(a) of the Model Rules provides:

> While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9, 2.2 or 3.7.

Under these rules, if Mr. Bachelor would be barred from representing Ms. Norman, then the same bar is imputed to all lawyers who are associated with him in the same firm, including Mr. Newell.

■ A violation of the Model Rules of Professional Conduct, however, does not automatically compel disqualification; rather, such matters involve the exercise of judicial discretion. We expressed this principle in *Burnett v. Morgan*, 303 Ark. 150, 155, 794 S.W.2d 145, 147–48 (1990), when we said:

> In applying these rules of conduct to a particular situation, we must do so with caution when considering disqualification of counsel. Disqualification is an absolutely necessary measure to protect and preserve the integrity of the attorney–client relationship; yet it is a drastic measure to be imposed only where clearly required by the circumstances. We must never forget that a disqualification, though aimed at protecting the soundness of the attorney–client relationship, also interferes with, or perhaps

destroys, a voluntary relationship by depriving a litigant of counsel of his own choosing — oftentimes affecting associations of long standing. The role of the court is to balance the current client's right to counsel of choice with the former client's right to protection of confidences transmitted, or likely to have been acquired, during the prior representation.

■ ■ Applying the rules of conduct to the case at bar, we conclude that Mr. Bachelor would be prohibited from representing Ms. Norman under Rule 1.9(b) and that Mr. Newell shares the conflict-of-interest disability of Mr. Bachelor pursuant to Rule 1.10(a). It is clear that the present action to enforce the alimony provision of the divorce decree is substantially related to the initial divorce proceeding, in which Mr. Norman was represented by a former associate of Mr. Bachelor and Mr. Newell. It is equally clear that the interests of parties are materially adverse. However, an attorney must have acquired actual knowledge of information protected by Rules 1.6 and 1.9(c) during his former association before the attorney and his firm will be disqualified. *See* Comment to Rule 1.9, Model Rules of Professional Conduct. In such an inquiry, two presumptions are applicable: (1) the attorney is presumed to have all the confidential knowledge that any member of the first firm possessed; and (2) the attorney is presumed, despite Rule 1.6, to share that knowledge with all members of the second firm. Howard W. Brill, *Arkansas Professional and Judicial Ethics* 73 (3d ed. 1994). The first presumption is rebuttable, and the burden is on the second firm to rebut the presumption. The second is not rebuttable, and the court will not erect a Chinese wall or employ other institutional barriers to overcome the presumption. *Id.*

Maintaining confidentiality is "a question of access to information." Comment Rule 1.9, Model Rules of Professional Conduct. The question of access to confidential information is to be resolved by examining the facts of the particular case under consideration, and "the burden of proving not only a lack of knowledge but also a lack of access to information should rest with the challenged attorney alleged to be disqualified." *Burnett,* 303 Ark. at 155-56, 794 S.W.2d at 148.

In the case at bar, appellee's counsel did not rebut this presumption. Instead, he stipulated that when Mr. Bachelor was associated with appellant's former attorney, no measures were taken to restrict access to client information. Mr. Newell continues to assert, however, that even if confidential information exists, it is not relevant to this proceeding and, in fact, cannot be used because the statute of limitations prevents appellee from collecting arrearage beyond the last five years. He further maintains that the parol-evidence rule bars testimony as to what the parties intended by the term "gross income."

We find this argument unpersuasive because the rules are concerned not only with the situation where an attorney has knowledge of protected information and uses that information, but also where an attorney has access to confidential information. Hence, we have said that the rules do not require a finding of prejudice in order for a conflict to exist under Rules 1.9 and 1.10. *Burnett*, 303 Ark. at 156, 794 S.W.2d at 148.

Because this issue may arise on retrial, we additionally address counsel's parol evidence argument, without deciding whether there was an ambiguity with respect to the term "gross income." We point out that ambiguities are both patent and latent. *C&A Const. v. Benning Const.*, 256 Ark. 621, 509 S.W.2d 302 (1974). We have said that a latent ambiguity arises when the contract on its face appears clear and unambiguous, but collateral facts exist that make the contract's meaning uncertain. *Countryside Casualty Co. v. Grant*, 269 Ark. 526, 601 S.W.2d 875 (1980). Parol evidence is admissible not only to bring out the latent ambiguity but also to explain the true intention of the parties. *Id.* at 530, 601 S.W.2d at 877-78. Therefore, it was entirely possible that the parties and the attorneys who represented them in the divorce action could have been called to testify as to the meaning of the term "gross income."

We conclude that Mr. Bachelor had a conflict of interest under Rule 1.9, which would prevent him from representing Ms. Norman, and this conflict is imputed to his partners, including Mr. Newell. When we balance Ms. Norman's right to choose counsel against Mr. Norman's right to protection of confi-

dences transmitted, or likely to have been acquired, during the divorce proceeding, we conclude that disqualification of Mr. Newell and his firm is warranted.

In light of this determination, we do not reach appellant's remaining assertions of error. This case must be reversed and remanded for a new trial.