Sharon J. STURDIVANT *v.* Timothy L. STURDIVANT

05–1305                                        241 S.W.3d 740

Supreme Court of Arkansas
Opinion delivered October 26, 2006

*Shepherd & Allred,* by: *Linda D. Shepherd.*

*Gill Elrod Ragon Owen & Sherman, P.A.,* by: *Judy P. McNeil.*

ANNABELLE CLINTON IMBER, Justice. This is a case of first impression involving the interpretation of the Arkansas Rules of Professional Conduct, more specifically Rule 1.18 (2006). The question raised on appeal is whether the circuit court erred in disqualifying attorney James L. Tripcony and his law firm from representing Appellant Sharon J. Sturdivant in a post-divorce custody proceeding against Appellee Timothy L. Sturdivant. We affirm the order of the circuit court.

A summary of the relevant facts is as follows: On February 15, 2005, the Pulaski County Circuit Court entered an amended decree and order that gave Timothy physical custody of his minor children from Sunday evening of every week until Thursday evening, as well as alternating weekend visitation. At that time, Sharon's attorney of record was Dee Scritchfield and Timothy's attorney of record was Linda Shepherd.

Two months later, on April 25, 2005, James L. Tripcony filed his entry of appearance as Sharon's attorney of record in the divorce proceeding. Timothy's counsel sent a letter to Tripcony,

notifying him that the Tripcony Law Firm had a conflict of interest that would require his immediate withdrawal as Sharon's attorney. Specifically, the letter stated that Timothy had consulted with Heather May of the Tripcony Law Firm about a change of custody before he retained the Shepherd Law Firm to represent him in the same matter. After receiving the notice of a potential conflict, Sharon's attorney filed a motion for relief from order.

According to testimony elicited at a hearing on the motion, Timothy retained Linda Shepherd to represent him in the divorce proceeding after a "lengthy consultation" with Heather May of the Tripcony Law Firm about his desire to seek a change of custody. May took notes during the consultation and Timothy gave her a copy of a journal in which he had recorded matters involving him, Sharon, and the children. He also disclosed facts that were not in the journal and told May everything he knew regarding the children and his concerns about his former wife. The journal was eventually disclosed to opposing counsel in the earlier custody proceeding that culminated in the entry of the February 15, 2005 amended decree and order. Finally, Timothy confirmed that he did not retain the Tripcony Law Firm to represent him in the custody proceeding.

Tripcony advised the court that when he was notified of the potential conflict, he and May checked their office files to find out whether Timothy had been in the office. Upon discovering that Timothy had indeed consulted with May, Tripcony consulted the newly revised rules of professional conduct concerning prospective clients. *See* Ark. R. Prof'l Conduct 1.18 (2006). He further stated that he and May reviewed her notes and determined that they had no information that would be harmful to Timothy. Following his review of May's consultation notes and the Arkansas Rules of Professional Conduct, Tripcony concluded that disqualification would not be warranted under Rule 1.18.

The circuit court ruled otherwise in an order entered on September 1, 2005, that disqualified Tripcony and his law firm from representing Sharon. Specifically, the court found that prior to Shepherd being retained by Timothy in the change-of-custody proceeding, Timothy had consulted with, received legal advice from, and provided confidential information to May concerning the custody proceeding. From that order, Sharon filed a timely notice of appeal.

In matters involving the disqualification of attorneys, this court has jurisdiction pursuant to Ark. R. App. P. – Civil 2(a)(8)

(2006). Additionally, this case presents significant issues needing clarification and development of the law, as well as significant issues concerning the construction of rules; therefore, jurisdiction is also proper pursuant to Ark. Sup. Ct. R. 1-2(b)(5) & (6) (2006).

We review a trial court's decision to disqualify an attorney under an abuse-of-discretion standard. *Craig v. Carrigo*, 340 Ark. 624, 12 S.W.3d 229 (2000). An abuse of discretion may arise by an erroneous interpretation of the law. *Seeco, Inc. v. Hales*, 334 Ark. 134, 969 S.W.2d 193 (1998).

The Arkansas Rules of Professional Conduct are material in disqualification proceedings. *Berry v. Saline County Memorial Hosp.*, 322 Ark. 182, 907 S.W.2d 736 (1995). As this case involves the interpretation of the rules of professional conduct, our standard of review is to read the rules as they are written, and interpret them in accordance with established principles of rule construction. *See Smith v. Sidney Moncrief Pontiac, Buick, GMC Co.*, 353 Ark. 701, 120 S.W.3d 525 (2003). It is our responsibility to decide what a rule means, and we will review the circuit court's construction *de novo*. *Id*. We are not bound by the circuit court's decision; however, in the absence of a showing that the court erred in its interpretation of the rule, that interpretation will be accepted as correct on appeal. *Id*. Language of a rule that is plain and not ambiguous must be given its obvious and plain meaning. *Id*. Neither rules of construction nor rules of interpretation may be used to defeat the clear and certain meaning of a rule provision. *Id*.

Furthermore, in reviewing the circuit court's factual findings, we must determine whether the judge's findings were clearly erroneous or clearly against the preponderance of the evidence; a finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Chavers v. Epsco, Inc.*, 352 Ark. 65, 98 S.W.3d 421 (2003).

For her sole point on appeal, Sharon asserts that the circuit court erred when it applied Rule 1.9 of the Arkansas Rules of Professional Conduct to disqualify Tripcony and his law firm. She claims that disqualification of her attorney is not warranted under Ark. R. Prof'l Conduct 1.18. As support for that claim, she asserts that the Tripcony Law Firm received no information that could be "significantly harmful" to her former husband.

Recently, we adopted the revised Arkansas Rules of Professional Conduct. *See In Re: Arkansas Bar Association - Petition to Revise the Arkansas Rules of Professional Conduct*, 361 Ark. Appx. 451

(2005). The revised rules contain Rule 1.18, which specifies the duties to a prospective client. Rule 1.18 provides as follows:

> (a)  A person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
>
> (b)  Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation, except as Rule 1.9 would permit with respect to information of a former client.
>
> (c)  A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).
>
> (d)  When the lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if:
>
> (1)  both the affected client and the prospective client have given informed consent, confirmed in writing, or:
>
> (2)  the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and
>
> (i)  the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
>
> (ii)  written notice is promptly given to the prospective client.

Rule 1.9, which deals with duties to former clients, states in pertinent part:

> (c)  A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a

matter shall not thereafter: (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

In her brief, Sharon points out that Timothy cited the cases of *Gipson v. Brown*, 288 Ark. 422, 706 S.W.2d 369 (1986), and *Martindale v. Richmond*, 301 Ark. 167, 782 S.W.2d 582 (1990), as well as Rules 1.7 and 1.9 of the Arkansas Rules of Professional Conduct, in support of his motion to disqualify the Tripcony Law Firm. She correctly notes that both cases were decided prior to the adoption of Rule 1.18 and that neither case involved prospective clients. Nonetheless, the cited cases merit consideration in our analysis of the instant matter, especially in view of the specific reference to Rule 1.9 in Rule 1.18(b).

In *Gipson v. Brown, supra*, we held that an attorney's previous representation of church elders gave rise to the presumption that confidential disclosures made by them in an earlier matter might be used to their detriment in the current action. We reasoned that if the earlier matter is substantially related to the current action, a presumption arises that confidences of the former client were disclosed to the former attorney. *Gipson v. Brown*, 288 Ark. 422, 706 S.W.2d 369. Moreover, the court will entertain the presumption and will not inquire into the nature and extent of the confidences; the confidential disclosures, whether actual or presumed, command the disqualification of the attorney when he or she represents an adverse interest in a related matter. *Id.*

We addressed a similar situation in *Martindale v. Richmond, supra*, where the attorney representing the former wife in a child-support proceeding had represented his client's former husband five years earlier. In *Martindale*, the attorney claimed that he did not learn about his prior representation of the former husband until five minutes before the scheduled hearing and that such late notice was merely a tactic to force settlement or a delay of the hearing. 301 Ark. 167, 782 S.W.2d 582. The *Martindale* court reaffirmed the appearance of impropriety as the governing standard in matters involving disqualification:

> Here, there is no evidence that [the attorney] actually intended to damage [the former husband's] defense in the present support proceeding with information or confidences he had previously

acquired from [him] during their attorney/client relationship. Nevertheless, the appearance exists that such an abuse could occur and for that reason, [the lawyer] should have declined to represent [the former wife] when he learned that he had represented [the former husband] earlier.

301 Ark. 167, 170, 782 S.W.2d 582, 584.

We further noted that disqualification from subsequent representation is for the client's protection and can only be waived by the client. *Martindale v. Richmond, supra.* Indeed, Rule 1.9 specifically states that an attorney who has a conflict of interest cannot represent the adverse party unless the attorney consults with and obtains consent from the former client. Ark. R. Prof'l Conduct 1.9(a) (2006).

Here, Sharon asserts that Rule 1.18 was adopted in 2005 to give guidance to attorneys in their duties owed to prospective clients, as opposed to Rule 1.9, which deals with former clients. Specifically, she relies upon Rule 1.18(c), which bars an attorney from representing a client with adverse interests to those of a prospective client in a substantially related matter if the attorney "received information from the prospective client that could be significantly harmful to that person in the matter." Sharon suggests that the circuit court erred in applying Rule 1.9 because its decision was based on an assumption that Heather May received information from Timothy that would be harmful to him in the instant matter. According to Sharon, there is no evidence that the Tripcony Law Firm received information from Timothy that could be significantly harmful to him. For that reason, she contends the law firm should not be disqualified from representing her. As further support for her position, Sharon cites Comment 1 to Ark. R. Prof'l Conduct 1.18, which states, "A lawyer's discussions with a prospective client usually are limited in time and depth and leave both the prospective client and the lawyer free (and sometimes required) to proceed no further. Hence, prospective clients should receive some but not all of the protection afforded clients."

In applying the provisions of Rule 1.18 to the facts of this case, it is undisputed that Timothy was a prospective client under the terms of Rule 1.18(a) when he consulted with Heather May of the Tripcony Law Firm. Moreover, as a result of that communication, May was prohibited from using or revealing information learned in her meeting with Timothy, "except as

Rule 1.9 would permit with respect to information of a former client." Ark. R. Prof'l Conduct 1.18(b) (2006). Thus, the duty May owed to Timothy as a prospective client under Rule 1.18(b) would be coextensive with the duty an attorney owes to a former client under Rule 1.9(c). Furthermore, the duty to a prospective client exists regardless of how brief the initial conference may have been and regardless of the fact that no client-attorney relationship ensued. Comment 3 to Ark. R. Prof'l Conduct 1.18 (2006).

As a lawyer subject to the provisions of Rule 1.18(b), May would also be prohibited from representing a client with interests materially adverse to those of her prospective client, Timothy, in the same or a substantially related matter if she received information from Timothy "that could be significantly harmful to [him] in the matter." Ark. R. Prof'l Conduct 1.18(c) (2006). The circuit court correctly concluded that Timothy was a prospective client of the Tripcony Law Firm and that the current action is the same custody proceeding for which Timothy consulted May of the Tripcony Law Firm. Likewise, Sharon does not contest the fact that her interests are materially adverse to those of her former husband, Timothy.

Sharon does, however, contest the circuit court's finding that, due to the nature of a change of custody proceeding, "detrimental or harmful information would have been obtained or gleaned from [his] conference with Ms. May." She relies upon the following colloquy between Timothy and Sharon's attorney:

> TRIPCONY: Do you have any correspondence from Ms. May or anyone else in my firm that would contain any information that you believe would be harmful to your case today?
>
> TIMOTHY: No, Sir.
>
> TRIPCONY: Are you saying that you told Ms. May things that would be harmful to your case?
>
> TIMOTHY: No – no, sir.

As further support, Sharon reiterates that the contents of Timothy's journal were disclosed in the earlier litigation between the parties.

Viewing the evidence in the light most favorable to the appellee, as our appellate standard of review requires when a lower court's findings of fact are challenged on appeal, we cannot say that

the circuit court clearly erred in finding that harmful information would have been forthcoming during Timothy's conference with Heather May of the Tripcony Law Firm about this change-of-custody proceeding. As stated earlier, Timothy testified that in addition to giving May a copy of his journal, he also told her about facts that were not in the journal, and he disclosed everything he knew and his concerns about the children and his former wife. According to Timothy, he acted upon advice received from May during the consultation with her. As to whether May received information that "could be significantly harmful" to Timothy, we agree with the circuit court that a lawyer who consults with a prospective client about a change-of-custody proceeding will necessarily become privy to information that could be used to the disadvantage of that person in the same proceeding. Similarly, the circuit court could reasonably conclude that a prospective client would not know whether the information disclosed during the consultation "could be significantly harmful."

In our holding, we do not deviate from the principle that a litigant, of course, is entitled to an attorney of his or her choosing. *Saline Memorial Hosp. v. Berry*, 321 Ark. 588, 906 S.W.2d 297 (1995). In the absence of an ethical violation, disqualification can be warranted; it is an available remedy to a trial court "to protect and preserve the integrity of the attorney-client relationship." *Craig v. Carrigo*, 340 Ark. 624, 12 S.W.3d 229 (2000) (quoting *Burnette v. Morgan*, 303 Ark. 150, 794 S.W.2d 145 (1990)). However, it is a drastic measure to be imposed only where the circumstances clearly require it. *Id.* The principle is not absolute and must be balanced against other considerations such as the issue we have before us today. *Seeco, Inc. v. Hales*, 334 Ark. 134, 969 S.W.2d 193 (1998).

Based on our review of the record, we conclude that the circuit court's findings of fact were not clearly erroneous or clearly against the preponderance of the evidence; nor did the circuit court abuse its discretion in disqualifying Tripcony and his law firm from representing Sharon in the custody proceeding.[1]

Affirmed.

---

[1] It is undisputed that May's disqualification would also extend to the other lawyers in the Tripcony Law Firm. Ark. R. Prof'l Conduct 1.18(c).