SLIP OPINION

Cite as 2015 Ark. 175

# SUPREME COURT OF ARKANSAS

No. CV–14–456

| | |
|---|---|
| LINDA J. EARLS AND TONY L. EARLS | **Opinion Delivered** April 23, 2015 |
| APPELLANTS | APPEAL FROM THE GREENE COUNTY CIRCUIT COURT [NO. CV-2006-247] |
| V. | |
| HARVEST CREDIT MANAGEMENT VI–B, LLC | HONORABLE PAMELA HONEYCUTT, JUDGE |
| APPELLEE | <u>REVERSED AND REMANDED; COURT OF APPEALS OPINION VACATED</u>. |

**JIM HANNAH, Chief Justice**

Appellant Linda J. Earls ("Linda")[1] appeals an order of the Greene County Circuit Court denying Linda's motion to set aside default judgment in favor of appellee Harvest Credit Management VI–B, LLC ("Harvest"). For reversal, Linda argues that the circuit court erred in granting default judgment because Harvest's summons was defective. Pursuant to Arkansas Supreme Court Rule 1-2(b)(1) (2014), we have jurisdiction of this case, as this appeal involves an issue of first impression. We reverse.

Linda and Tony L. Earls ("the Earlses") received a Chase credit card, and Harvest is

---

[1] The circuit court granted default judgment in favor of Harvest against Linda J. Earls and Tony L. Earls. Linda J. Earls filed the motion to set aside the default judgment. Linda J. Earls filed the notice of appeal, appeals the circuit court's default judgment, and its order denying the motion to set aside the default judgment. Thus, we treat Linda as the appellant in this case.

the assignee of the credit-card account. The Earlses made numerous charges on the card, leaving an outstanding balance of $4678.21. When the Earlses' account remained past due, Harvest placed demands for payment, but the account went unpaid. On August 30, 2006, Harvest filed a complaint seeking a judgment against the Earlses in the amount of $4678.21, prejudgment interest of $2448.56, and attorney's fees. On November 14, 2006, the Earlses were served with process. Harvest's summons, which accompanied the complaint, stated that the answer must be filed "within (20) TWENTY DAYS from the day you were served this summons; OR THIRTY (30) days if you are a non-resident of this state *or a person incarcerated in any jail, penitentiary, or other correctional facility in this state*" (emphasis added). According to Arkansas Rule of Civil Procedure 12(a) in effect at the time filed, the summons correctly stated that an in-state defendant had twenty days to answer and that an out-of-state defendant had thirty days to answer, but the summons incorrectly stated that an incarcerated defendant had thirty days, instead of sixty days, to file an answer. The Earlses were not incarcerated. The Earlses did not answer Harvest's complaint. On March 13, 2007, the circuit court entered a default judgment in favor of Harvest in the amount of $4678.21, prejudgment interest of $2980.73, attorney's fees of $500, and court fees of $240.

On December 14, 2012, Linda filed a motion to set aside the default judgment, arguing that Harvest's summons was defective on its face and did not strictly comply with Rule 4 of the Arkansas Rules of Civil Procedure because of the incorrect response time related to incarcerated defendants. She also asserted that the default judgment was void and unenforceable. In support of her position, Linda relied on an unreported federal district court

decision that held that the summons, which was identical to the one in the present case, was defective. *See Charkoma Res., LLC, v. JB Energy Explorations*, LLC, No. 09-02118, 2009 WL 4829014 (W.D. Ark. Dec. 8, 2009). In response, Harvest argued that the federal case was not binding on this court and that the Earlses' response time was listed in its summons and, therefore, it complied with Rule 4.[2] On March 8, 2013, the circuit court entered its order denying Linda's motion to set aside default judgment. Linda appealed to the court of appeals, which reversed the circuit court's decision. *See Earls v. Harvest Credit Mgmt.*, 2014 Ark. App. 294. In *Earls*, the court of appeals held that the summons was defective because it stated that an incarcerated defendant had only thirty days to respond instead of the correct sixty days, even though the error did not apply to the Earlses.

On May 23, 2014, Harvest filed a petition for review. In its petition, Harvest argued that the court of appeals' holding conflicted with the plain language of Rule 4, which, Harvest claimed, does not expressly require a summons to list the correct response time for every potential defendant. Harvest maintained that Rule 4 requires only that a summons state the time within which the actual defendant is required to respond. Citibank, N.A. and Unifund CCR Partners filed amicus curiae briefs in support of Harvest's argument. This court accepted Harvest's petition for review. When we grant a petition for review, we consider the appeal as though it had been originally filed in this court. *Bohannon v. Robinson*, 2014 Ark. 458, 447 S.W.3d 585.

On appeal, Linda argues that the circuit court erred in entering a default judgment and

---

[2] In Harvest's argument, it refers to the appellant as the Earls.

SLIP OPINION

in refusing to set aside the default judgment because Harvest's summons did not strictly comply with Rule 4. Specifically, Linda asserts that the summons was defective because it listed "the defendant," as set forth in the language of Rule 4(b), when there were actually two defendants; that each one could have chosen a different response time listed in the summons; and that the response time of incarcerated defendants was in error.

Harvest responds that the incorrect information on the summons was not applicable to the Earlses. In support of its position, Harvest cites *Talley v. Asset Acceptance, LLC*, 2011 Ark. App. 757 (reversing the circuit court's refusal to set aside the default judgment because the circuit court's zip code was incorrect), for the proposition that Rule 4 requires substantial compliance and that any incorrect information that is superfluous will not render the summons deficient. Harvest also relies on this court's ruling in *Nucor Corporation v. Killman*, 358 Ark. 107, 186 S.W.3d 720 (2004), in which this court held that the summons at issue was not fatally defective because Nucor, the party at issue, was correctly identified in the summons; that the summons in no way failed to apprise Nucor of the pendency of the lawsuit; and that a literal application of adhering to a strict compliance of Rule 4(b) would lead to an absurd result.

The issue on appeal is whether an error, which does not apply to the actual defendant, or defendants in this case, renders the summons defective. Our standard of review for an order denying a motion to set aside default judgment depends on the grounds upon which the appellant claims the default judgment should be set aside. *Steward v. Kuettel*, 2014 Ark. 499, 450 S.W.3d 672. In cases in which the appellant claims that the default judgment is

SLIP OPINION

void, our review is de novo, and we give no deference to the circuit court's ruling. *Id.*

Further, a circuit court's interpretation of a court rule is reviewed de novo by this court.

*Gatson v. Billings*, 2011 Ark. 125.

Rule 4(b) governs the form of summonses and provides as follows:

> (b) Form. The summons shall be styled in the name of the court and shall be dated and signed by the clerk; be under the seal of the court; contain the names of the parties; be directed to the defendant; state the name and address of the plaintiff's attorney, if any, otherwise the address of the plaintiff; and *the time within which these rules require the defendant to appear, file a pleading, and defend* and shall notify him that in case of his failure to do so, judgment by default may be entered against him for the relief demanded in the complaint.

Ark. R. Civ. P. 4(b) (2014) (emphasis added). This court adopted an "Official Form of

Summons," on May 24, 2001, and it became effective on July 1, 2001. *See In re*

*Implementation of Amend. 80: Amendments to Rules of Civ. P.*, 345 Ark. App'x 606 (2001) (per

curiam) (mandating that specific language appear in a summons regarding the defending

parties' time for filing a responsive pleading).

The law in Arkansas is well settled that service of valid process is necessary to give a

court jurisdiction over a defendant. *Patsy Simmons Ltd. P'ship v. Finch*, 2010 Ark. 451, 370

S.W.3d 257; *Smith v. Sidney Moncrief Pontiac, Buick, GMC Co.*, 353 Ark. 701, 120 S.W.3d 525

(2003). This court has explained its service requirements as follows:

> Our case law is well settled that statutory service requirements, being in derogation of common-law rights, must be strictly construed and compliance with them must be exact. This court has held that the same reasoning applies to service requirements imposed by court rules. More particularly, the technical requirements of a summons set out in Ark. R. Civ. P. 4(b) must be construed strictly and compliance with those requirements must be exact. *Actual knowledge of a proceeding does not validate defective process.* The reason for this rule is that service of valid process is necessary to give a court jurisdiction over a defendant.

5

SLIP OPINION

We have made it clear in a long line of cases that compliance with Rule 4(b) must be exact. *The bright line standard of strict compliance permits certainty in the law; whereas, a substantial compliance standard would lead to an ad hoc analysis in each case in order to determine whether the due-process requirements of the Arkansas and U.S. Constitutions have been met.*

*Trusclair v. McGowan Working Partners*, 2009 Ark. 203, at 3–4, 306 S.W.3d 428, 430 (emphasis added) (citations omitted). In applying our strict–compliance standard, this court has held that a summons that provides an incorrect number of days within which the defendant must file an answer after service of the summons is defective and will deprive the circuit court of jurisdiction over a defendant. *See Patsy Simmons Ltd. P'ship*, 2010 Ark. 451, 370 S.W.3d 257 (summons incorrectly informing the defendant, a domestic partnership, that it had thirty days, instead of twenty days, to answer); *Trusclair*, 2009 Ark. 203, 306 S.W.3d 428 (summons incorrectly notifying the defendant, a foreign corporation, that it had twenty days, instead of thirty days, to answer).

With this precedent in mind, we turn to the present case. Here, Harvest's summons stated in pertinent part that the answer

> must be filed within (20) TWENTY DAYS from the day you were served this summons; OR THIRTY (30) days if you are a non–resident of this state *or a person incarcerated in any jail, penitentiary, or other correctional facility in this state.*

As previously noted, Harvest's summons incorrectly stated that an incarcerated defendant had thirty days, instead of sixty days, to file an answer. *See* Ark. R. Civ. P. 12(a).

Here, the circuit court stated in its order that service upon the Earlses was proper. However, the language of Rule 4(b) requiring that the summons be directed to "the defendant," or in this case, the Earlses, must be read in conjunction with Rule 12(a), which

provides for varying response times for in-state, out-of-state, and incarcerated defendants. Given that Rule 4 and Rule 12 govern summonses and the response times therein, we cannot ignore our case law that states that a summons must comply exactly and not substantially with the requirements of Rule 4(b).[3] *See Patsy Simmons Ltd. P'ship*, 2010 Ark. 451, 370 S.W.3d 257. Thus, we conclude that the response times for each category of defendant—in-state, out-of-state, and incarcerated defendants—must be correct and exact. Further, pursuant to our holding in *Trusclair*, 2009 Ark. 203, 306 S.W.3d 428, the fact that the Earlses had knowledge of the proceedings, notwithstanding the error in the summons, did not validate process. This holding comports with our holding in *Trusclair* in which this court adhered to a bright-line standard, rejected a substantial-compliance standard, and refused to engage in an ad-hoc analysis of deciding the validity of a summons on a case-by-case basis.

Because Harvest's summons contained an incorrect response time, it failed to meet the requirements of Rule 4(b) and Rule 12(a) by incorporation. We hold that Harvest's summons falls short of strict compliance, as required by Rule 4(b). Accordingly, we reverse the circuit court's grant of default judgment in favor of Harvest and its denial of Linda's motion to set aside default judgment on the basis that service upon the Earlses was proper.

Reversed and remanded; court of appeals opinion vacated.

Special Justice JAMES ARNOLD joins this opinion.

HART, J., concurs.

---

[3]For this reason, Harvest's reliance on *Nucor*, 358 Ark. 107, 186 S.W.3d 720, is misplaced. Unlike Harvest's summons in this case, the *Nucor* summons did not contain an erroneous statement of any of the provisions of either Rule 4(b) or Rule 12(a).

BAKER and GOODSON, JJ., dissent.

WOOD, J., not participating.

**JOSEPHINE LINKER HART, Justice, concurring.** I write separately because I have long believed that the best application of Rule 4 of the Arkansas Rules of Civil Procedure should be substantial compliance. Mechanical application of Rule 4, and the attending jurisprudence, have yielded patently unjust results, and I have so stated. *See Reichardt v. Creasey*, 2010 Ark. App. 736, 379 S.W.3d 655. However, because this court steadfastly continues to embrace its strict-compliance jurisprudence, it should be consistent. I therefore cannot join the dissent's suggestion that this court should now create yet another exception in the application of Rule 4 and still call it "strict compliance." Our existing patchwork of opinions has led, as the majority notes, the appellee to believe that we have sanctioned de facto substantial compliance. In my view, increasing the level of uncertainty in this area of the law is a cure that is worse than the disease. Finally, I agree with the appellant that this case does not turn on giving the incorrect number of days for an incarcerated person. Inexplicably, Harvest chose not to use the official summons form that this court adopted on May 24, 2001. That form contained blanks to be filled in with the information that applied to a particular defendant. The form that Harvest chose contains inapplicable information, which was not in "strict compliance" with Rule 4.

**KAREN R. BAKER, Justice, dissenting.** I wholeheartedly agree with the majority that we require strict compliance with Arkansas Rule of Civil Procedure 4. Therefore, I must dissent from the majority's conclusion that the summons at issue in the present case was

defective because the majority has failed to adhere to the language of Rule 4.

Neither rules of construction nor rules of interpretation may be used to defeat the clear and certain meaning of a rule provision. *Solis v. State*, 371 Ark. 590, 595, 269 S.W.3d 352, 356 (2007) (citing *Sturdivant v. Sturdivant*, 367 Ark. 514, 517, 241 S.W.3d 740, 743 (2006)). Further, service requirements imposed by court rules "must be construed strictly and compliance with those requirements must be exact." *Id.* (citing *Smith v. Sidney Moncrief Pontiac, Buick, GMC Co.*, 353 Ark. 701, 709, 120 S.W.3d 525, 530 (2003)).

Rule 4, as it appeared when Harvest filed its complaint, requires that the summons include "the times within which these rules require the defendant to appear, file a pleading, and defend and shall notify him that in case of his failure to do so, judgment by default may be entered against him for the relief demanded in the complaint." Ark. R. Civ. P. 4(b) (2007); *see also In Re Arkansas Rules of Civil Procedure*, 366 Ark. App'x 644 (2006) (per curiam) (adopting amendments to Rule 4 effective May 25, 2006). The parties do not dispute that, at the time the summons was issued in this case, the rule granted an incarcerated defendant sixty days, rather than the thirty days stated in Harvest's summons, to file an answer. The parties also do not dispute that the Earls were not incarcerated at the time the summons was served. This court has not addressed the precise issue in this case: whether a misstated response time that does not apply to the defendant served renders a summons defective.

Resolution of this first-impression issue requires this court to examine Rule 4 and our prior cases relating to the content of a valid service of summons. In *Patsy Simmons Ltd. Partnership v. Finch*, this court held that a summons stating that an in-state defendant had thirty

days, rather than twenty days, was deficient and deprived the circuit court of jurisdiction. 2010 Ark. 451, at 6, 370 S.W.3d 257, 261. In *Trusclair*, relied on by the *Patsy Simmons* court, this court held that a summons stating that an out-of-state defendant had twenty days, rather than thirty days, to respond to a complaint, was deficient and deprived the circuit court of jurisdiction. *Trusclair*, 2009 Ark. 203, at 5, 306 S.W.3d at 431. In both instances, this court held that statutory service requirements must be strictly construed and compliance must be exact; therefore, we concluded that the respective circuit courts properly dismissed the underlying complaints based on the deficiency of the summons under Rule 4(b). *Patsy Simmons*, 2010 Ark. 451, at 5–6, 370 S.W.3d at 261; *Trusclair*, 2009 Ark. 203, at 5, 306 S.W.3d at 431.

In the present case, Harvest contends that its summons was not deficient because the plain language of Rule 4 does not require a summons to list the correct response time for every class of defendant, but requires only that a summons state the time within which the defendant must respond. Harvest contends that a summons is not deficient when there is an error in the superfluous language that is not required to be included under Rule 4. Harvest maintains that this court's opinion in *Nucor Corporation v. Kilman*, 358 Ark. 107, 186 S.W.3d 720 (2004) is persuasive in the present circumstances. In *Nucor*, this court determined that a summons was not defective when it listed the defendant correctly but incorrectly listed other defendants. 358 Ark. at 122, 186 S.W.3d at 729. In that case, this court rejected a "literal application" of Rule 4(b) that would lead to "absurd consequences." *Id*.

Rule 4 states that the summons "shall. . . contain . . . the time within which these rules

require *the defendant* to file a pleading, and defend. . ." Ark. R. Civ. P. 4(b) (emphasis added).

In contrast to Rule 4(b)'s use of the article "the," Arkansas Rule of Civil Procedure 12, which

provides the time for filing an answer to a complaint, states, "*A defendant* shall file his or her

answer . . ." Ark. R. Civ. P. 12(a)(1) (emphasis added). While the majority affirms that these

two rules must be read "in conjunction," the majority fails to acknowledge the textual

difference between the two. The two rules use two different articles, "the" versus "a," in

referring to defendants. In plain English, "the" is a definite article that points to a definite

object that (1) is so well understood that it does not need description; (2) is a thing that is

about to be described; or (3) is important. *The Chicago Manual of Style* R. 5.69 (16th ed.

2010). In contrast, "a" is an indefinite article used to refer to nonspecific objects, things, or

persons that are not distinguished from the other members of a class. *The Chicago Manual of

Style* R. 5.70 (16th ed. 2010). Accordingly, a strict application of Rule 4 requires that the

summons correctly state the response time for the specific defendant served, whereas Rule 12,

sets out the response times for all classes of defendants.[1]

---

[1]In varying contexts, other jurisdictions acknowledge that use of a definite rather than indefinite article is an indication of meaning. *Dep't of Ecology v. City of Spokane Valley*, 275 P.3d 367, 373 (Wash. Ct. App. 2012); *Toshiba Corp. v. Imation Corp.*, No. 09-CV–305-SLC, 2013 WL 1248633, at 15 (W.D. Wis. Mar. 26, 2013) *supplemented by*, No. 09-CV–305-SLC, 2013 WL 7157854 (W.D. Wis. Apr. 5, 2013) (discussing the impact of the indefinite article "an" versus a definite article "the" when used in a claim); *Robinson v. City of Lansing*, 782 N.W.2d 171, 186 (Mich. 2010) (Young, J., concurring) ("[T]he Legislature's varied use of definite versus indefinite articles in a statute requires that those articles be accorded their grammatically correct meanings."); *State v. Rodriguez*, 175 P.3d 471, 475 (Or. Ct. App. 2007) ("[W]e ordinarily assume that the use of the indefinite article, as opposed to the definite article, has legal significance."); *BP Am. Prod. Co. v. Madsen*, 53 P.3d 1088, 1092 (Wyo. 2002) ("[I]n construing statutes, the definite article 'the' is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'"); *In re Am. Freight Sys., Inc.*, 185 B.R. 345,

Moreover, this interpretation reconciles *Trusclair*, *Patsy Simmons*, and *Nucor*. In both *Trusclair* and *Patsy Simmons*, the defect related to the specific defendants served. In *Nucor*, however, the defect did not relate to the specific defendant served. Instead, the defect involved the misidentification of another party. Read together, these three cases implicitly recognize that the requirements of Rule 4 apply to the specific defendant served, and not to any defendant within the entire class of possible defendants.

Moreover, I disagree with the majority's assertion that Harvest's reliance on *Nucor* is misplaced because the summons at issue in *Nucor* "did not contain an erroneous statement of any of the provisions in Rule 4(b) or 12(a)." As this court recognized in *Nucor*, Rule 4(b) requires that the summons "contain the names of the parties." 358 Ark. at 123, 186 S.W.3d at 729; *see also* Ark. R. Civ. P. R. 4(b) ("The summons shall . . . contain the names of the parties."). Thus, that the summons contain the names of the parties is a provision of Rule 4(b), although it is not a provision of Rule 12(a). Despite the fact that the summons in *Nucor* contained an error as to the name of one of the parties, we refused to adopt a "literal interpretation" of Rule 4(b)'s provisions that would require a listing of every plaintiff and every defendant on every summons, no matter how many plaintiffs and defendants are parties to the case. While I acknowledge that *Nucor* is not directly on point with the present facts,

---

352 (Bankr. D. Kan. 1995) (finding that the use of "the" is appropriate only when the thing referred to has been previously identified and criticizing constructions that substitute an indefinite article or word like "an," rather than the definite article "the"); *United States v. Hudson*, 65 F. 68, 71 (W.D. Ark. 1894) ("'The' is the word used before nouns, with a specifying or particularizing effect, opposed to the indefinite or generalizing force of 'a' or 'an.'").

as it involved the names of the parties and not the response times for various categories of defendants, I disagree with the majority's attempt to circumvent the holding of that case by stating that the names of the parties are not a provision of Rule 4(b).

In short, the use of the definite article "the" before defendant means that the requirements of Rule 4 apply to the specific defendant identified by the summons and errors that do not pertain to that defendant do not render the summons defective. The majority errs by conflating Rules 4(b) and Rule 12 and requiring that a summons must state the correct response time for all categories of defendants listed, regardless of whether the response time for the defendant summoned is correctly stated. Instead, the majority should confine its analysis to reviewing whether the summons properly states the response time for the defendant served, which is all that is required under our Rules and by our precedents. Therefore, I dissent.

GOODSON, J. joins in this dissent.

*Crawley, DeLoache & Hargis, PLLC*, by: *Joel G. Hargis*; and
*The Cruz Law Firm, PLC*, by: *Kathy A. Cruz*, for appellants.

*Hosto & Buchan, P.L.L.C.*, by: *Travis A. Gray* and *Brien Saputo*, for appellee.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *R.T. Beard III* and *Brian A. Pipkin*, amicus curiae for Citibank, N.A.

*Munson, Rowlett, Moore & Boone, P.A.*, by: *Sarah E. Cullen*; and
*Dinsmore & Shohl, LLP*, by: *Alan H. Abes*, amicus curiae for Unifund CCR Partners.