RHONDA K. WOOD, Associate Justice
Appellants', The Park Apartments at Fayetteville, LP, The Park Apartments at Fayetteville Management Company, LLC, and Lindsey Management Co., Inc. (Lindsey) (collectively "the Park"),[1] appeal centers around the following issue: Do Arkansas's Rules of Professional Conduct require attorney disqualification simply because the attorney had access to client information but did not gain actual knowledge while practicing at her former association? We hold that they do not, and therefore, we reverse and remand.
*757 I. Facts
In November 2015, appellee Shilah Plants filed a complaint against the Park alleging that the liquidated-damages clause in her lease agreement is unenforceable, constitutes an illegal penalty, and violates the Arkansas Deceptive Trade Practices Act and the Arkansas Security Deposit Act. Plants's attorneys work for Legal Aid of Arkansas (Legal Aid) in Jonesboro. Attorneys from Lindsey's in-house legal department represent the Park.
From July 2016 through December 2016, Summer McCoy worked as a staff attorney for Legal Aid in its Springdale office. Legal Aid assigns cases among attorneys based on four workgroups: domestic violence, consumer, housing, and economic justice. McCoy worked in the economic-justice workgroup which primarily deals with issues associated with Medicare, Medicaid, ARKids, SNAP benefits, unemployment benefits, and home healthcare. In January 2017, McCoy began working as a staff attorney for Lindsey.
In February 2017, Plants filed a motion to disqualify the Park's attorney and Lindsey's entire in-house legal department. Plants alleged a conflict of interest arose because, while McCoy was working at Legal Aid, she had access to Plants's confidential attorney and client information and files. Plants further claimed that although McCoy did not appear as counsel in the case, McCoy's conflict of interest should be imputed to the Park's attorney and the entire Lindsey legal department because McCoy is now part of that department.
Following a July 2017 hearing, the circuit court concluded that McCoy had a conflict of interest because "she had full access to all of Legal Aid's files." The circuit court further imputed McCoy's conflict to the other attorneys in Lindsey's in-house legal department. Consequently, it granted the motion to disqualify. Park filed an interlocutory appeal pursuant to Arkansas Rules of Appellate Procedure-Civil 2(a)(8).
The Park makes four arguments on appeal: (1) the circuit court erroneously applied Norman v. Norman , 333 Ark. 644, 970 S.W.2d 270 (1998), when it concluded that access to client information alone is sufficient for attorney disqualification; (2) Legal Aid does not have any confidential information because its information is subject to disclosure under the Arkansas Freedom of Information Act; (3) the circuit court erred in disqualifying the Park's attorney because McCoy's association with Lindsey's legal department did not create an appearance of impropriety; and (4) the circuit court erred in failing to find Plants waived her right to move to disqualify the Park's counsel. Because we reverse on the first point, we do not address the remaining arguments.
II. Principles of Law and Analysis
On appeal, we review a circuit court's decision to disqualify an attorney under an abuse-of-discretion standard. Sturdivant v. Sturdivant , 367 Ark. 514, 241 S.W.3d 740 (2006). An abuse of discretion may be manifested by an erroneous interpretation of the law. Craig v. Carrigo , 340 Ark. 624, 12 S.W.3d 229 (2000). The Arkansas Rules of Professional Conduct are applicable in disqualification proceedings. Norman , 333 Ark. at 651, 970 S.W.2d at 272-73. We read the rules as they are written and interpret them in accordance with our established principles of rule construction. Sturdivant , 367 Ark. at 517, 241 S.W.3d at 743. If the rule's language is plain and unambiguous, we will give it the obvious and plain meaning. Id.
We begin with the Park's first argument that the circuit court erroneously applied Norman . The Park asserts that under the *758 Arkansas Rules of Professional Conduct an attorney must have actual knowledge of confidential information to be disqualified, and the circuit court erroneously interpreted Norman as holding that access to a client's information alone is sufficient for disqualification.
In Norman, we reversed the trial court's decision not to disqualify an attorney, Newell, who was representing the ex-wife in a petition to enforce an alimony provision contained in a divorce decree, because Newell's law partner was formerly associated with Callahan, who had represented the ex-husband during the parties' earlier divorce proceeding. Norman , 333 Ark. at 653-54, 970 S.W.2d at 273-74. In considering the disqualification, we stated, "[A]n attorney must have actual knowledge ... during his association before the attorney and his firm will be disqualified." Id. at 654, 970 S.W.2d at 274. We further stated that "an attorney is presumed to have all the confidential knowledge that any member of his first firm possessed." Id. This is a rebuttable presumption and the second firm has the burden to overcome it. Id. In Norman , we concluded that the Rules required Newell's disqualification because he did not rebut the presumption. Id. This application of the law to the facts tracks the language in the Rules.
However, Norman created confusion when it implied that the challenged attorney had to rebut the presumption that she had no actual knowledge and no access to the former client's information,
Maintaining confidentiality is a question of access to information. The question of access to confidential information is to be resolved by examining the facts of the particular case under consideration, and the burden of proving not only a lack of knowledge but also a lack of access to information should rest with the challenged attorney alleged to be disqualified.
Id. at 654, 970 S.W.2d at 274 (cleaned up).
Eight years before Norman , in Burnette v. Morgan , we similarly stated,
We believe that Rule 1.10 proscribes such representation only when the attorney involved actually has knowledge acquired during the former association. Thus, the rebuttable presumption is created. The entire question of access to confidential information is to be determined by examining the facts of the particular case under consideration. All inferences, presumptions and deductions should be considered in resolving the question of disqualification. When disqualification is sought, the burden of proving not only a lack of knowledge but also a lack of access to information should rest with the challenged attorney alleged to be disqualified.
303 Ark. 150, 155-56, 794 S.W.2d 145, 148 (1990).
The Park contends that the circuit court erroneously interpreted the law. It argues that per Norman and Burnette only actual knowledge of confidential information is required for an attorney's disqualification, and while actual knowledge is presumed, it is a rebuttable presumption. Instead, the circuit court found "that since Ms. McCoy had full access to all of Legal Aid's files, regardless of whether she had knowledge or represented Plaintiff in any capacity while employed as an attorney at Legal Aid, she is disqualified." (Emphasis added.) In response, Plants asserts the circuit court correctly interpreted Norman and Burnette as holding that the challenged attorney must prove both lack of knowledge and lack of access to the former client's information.
Importantly, both Norman and Burnette held that actual knowledge was required for an attorney's disqualification.
*759 Norman , 333 Ark. at 653, 970 S.W.2d 270 (stating "an attorney must have acquired actual knowledge of information protected by Rules 1.6 and 1.9(c) during his former association before the attorney and his firm will be disqualified") (emphasis added); Burnette , 303 Ark. at 155, 794 S.W.2d at 148 (stating that disqualification should occur "only when the attorney involved actually has knowledge acquired during the former association") (emphasis included). However, Burnette included the following language, which the Norman court quoted, "the burden of proving not only a lack of knowledge but also a lack of access to information should rest with the challenged attorney." Consequently, both cases held that actual knowledge was required. Yet they also implied that the challenged attorney must prove a lack of access to the client's information. These two propositions are incompatible. Certainly, if one has actual knowledge of information, she had access to that information. However, one can have access to such information without actual knowledge. Because of this contradiction, we look to the express language of our Rules.
Under Rule 1.9(b), an attorney who has changed firms is prohibited from knowingly representing a person in the same or a substantially related matter in which the attorney's former firm had previously represented the opposing party only if she "acquired information protected ... that is material to the matter." The Comments to Rule 1.9 further provide that "paragraph (b) [of Rule 1.9] operates to disqualify the lawyer only when the lawyer involved has actual knowledge of information protected...." Ark. R. Prof'l Conduct 1.9 cmt. [5] (emphasis added). And "if a lawyer ... acquired no knowledge or information relating to a particular client [of her first firm] ... neither the lawyer individually nor the second firm is disqualified from representing another client in the same or a related matter even though the interests of the two clients conflict." Id. (emphasis added). Thus, Rule 1.9 does not include the requirement that the challenged attorney prove she did not have access to the client's information. Rather, the attorney must only rebut the presumption that she acquired actual knowledge of information protected. We will give a rule that is plain and unambiguous its obvious meaning. "Neither rules of construction nor rules of interpretation may be used to defeat the clear and certain meaning of a rule provision." Sturdivant , 367 Ark. at 517, 241 S.W.3d at 743.We therefore overrule Norman and Burnette to the extent they added the requirement that the challenged attorney prove she had no access to confidential information.
In this case, the Park successfully rebutted the presumption of actual knowledge. Legal Aid divides its attorneys into workgroups or divisions. McCoy was assigned to the economics division. Plants's case was assigned to the housing division, and McCoy did not participate in that division's conferences. She testified that she had no actual knowledge of Plants's confidential information, never accessed Plants's file, and never participated in Plants's case. Indeed, McCoy testified that she did not participate in any telephone conferences related to the housing workgroup. McCoy rebutted the presumption that she had confidential knowledge, and Plants offered no evidence to contradict McCoy's testimony. These facts sharply contrast Norman and Burnette where counsel had actual knowledge but argued that the knowledge was irrelevant or not prejudicial.
Still, we do not take any potential breach of attorney-client confidences lightly. And we should always consider disqualifications *760 of counsel with caution. Burnette , 303 Ark. at 155, 794 S.W.2d at 148. While disqualification is necessary to protect and preserve the attorney-client relationship, it is a drastic measure and should be imposed only when clearly required. Therefore, we must balance protecting an attorney-client relationship with depriving a litigant of his or her choice of counsel. Additionally, today many lawyers associate in firms, many to some degree limit their practice to one field or another or one division or another, and many move from one firm to another several times in their careers. See Ark. R. Prof'l Conduct 1.9 cmt [4]. Absent some potential exposure of client confidentiality, we decline to unduly limit a litigant's choice of counsel and the ability of attorneys to freely associate and disassociate. Here, McCoy not only had no contact with the client, but also no contact with any of the client's information. Under these circumstances, we cannot deny the Park's right to counsel.
III. Conclusion
We reverse the circuit court's disqualification order and remand because the circuit court's decision to disqualify the Park's attorney and Lindsey's in-house legal department was clearly erroneous. In light of this determination, we decline to address the Park's remaining points on appeal.[2]
Reversed and remanded.
Special Justice Joshua A. Newton joins in this opinion.
Baker, J., dissents.
Hart, J., not participating.

The Park Apartments at Fayetteville, LP, owns an apartment complex in Fayetteville, Arkansas. The Park Apartments of Fayetteville Management Company, LLC, is the general partner of the Park Apartments at Fayetteville, LP, and Lindsey Management Co., Inc., contracts with The Park Apartments at Fayetteville, LP, to provide management services.

We additionally note that Plants did not argue to the circuit court that the Park's attorneys should be disqualified because there was an appearance of impropriety, and the circuit court did not rule on this point below.