Cite as 2024 Ark. App. 438

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-23-310

| | |
|---|---|
| MARILYN AND SCOTT TURNBOW<br>APPELLANTS<br><br>V.<br><br>HIEGEL BUILDING SOLUTIONS, LLC<br>APPELLEE | Opinion Delivered September 18, 2024<br><br>APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT<br>[NO. 23CV-22-1177]<br><br>HONORABLE SUSAN WEAVER, JUDGE<br><br>REVERSED AND REMANDED |

**MIKE MURPHY, Judge**

Appellants Marilyn and Scott Turnbow bring this interlocutory appeal from the order of the Faulkner County Circuit Court disqualifying their counsel and their counsel's law firm from representing them in a lawsuit against them filed by appellee Hiegel Building Solutions, LLC. The Turnbows argue on appeal that the circuit court erred in granting the disqualification. We reverse and remand.

In September 2022, Hiegel Building Solutions, LLC (Hiegel or Hiegel Building Solutions), filed a complaint against Marilyn and Scott Turnbow seeking to enforce a materialman's lien. The parties had contracted for Hiegel Building Solutions to build the Turnbows a house. After completing construction, Hiegel sent the Turnbows a final invoice in September 2021. The invoice went unpaid, and suit followed.

The Turnbows, represented by The Jiles Firm, P.A., responded and moved to dismiss. Thereafter, Hiegel moved to disqualify the Turnbows' counsel and firm due to a conflict of interest or an appearance of impropriety. The sole member of Hiegel Building Solutions is Gregory Hiegel, and according to the motion to disqualify, The Jiles Firm provided "ongoing corporate general counsel services" to one of Gregory's other businesses, Eagle Rock Contracting. The motion explained that Hiegel was "hesitant" to prosecute the matter against the Turnbows because The Jiles Firm provided past and ongoing legal services to Gregory's other business.

The hearing on Hiegel's motion to disqualify was held on March 1, 2023. Gregory Hiegel and Thomas Vinson (a partner at The Jiles Firm) testified. Vinson testified that his client, Eagle Rock Realty and Property Management, created and is an owner of Eagle Rock Contracting. He said that he had worked on the transaction documents when Gregory purchased his interest in Eagle Rock Contracting, which consists of a 50 percent profit-sharing interest and a 30 percent voting interest. Vinson testified that he performed work for Eagle Rock Realty and Property Management as recently as the day before the hearing. Vinson said that he is not concerned with violating any ethical rules because (1) his client is Eagle Rock Realty and Property Management and not Eagle Rock Contracting, and (2) the plaintiff in this case is Hiegel Building Solutions and not Eagle Rock Realty and Property Management, Eagle Rock Contracting, or even Gregory Hiegel. Vinson had once before represented Eagle Rock Contracting, and that was when Gregory purchased his interest in the company. At the time of that transaction, Gregory was represented by separate counsel.

Gregory testified that when he met Vinson at The Jiles Firm, he was under the impression that Vinson represented him. He did not specifically remember reading the part of the purchase agreement that provided that he was advised to seek counsel. He did recall hiring outside counsel to represent him in the transaction. Neither Gregory individually nor Hiegel Building Solutions ever paid money to The Jiles Firm.

The court invited the parties to make closing arguments by brief due at the end of the week. An order granting Hiegel's motion to disqualify was then entered on March 9. That order disqualified The Jiles Firm from representing the Turnbows in the litigation. The order provided no findings of fact or conclusions of law. The Turnbows filed their notice of interlocutory appeal on April 7 and an amended notice on April 26. This is an appeal taken under Arkansas Rule of Appellate Procedure 2(a)(8), which makes orders disqualifying attorneys from further participation in a case immediately appealable.

I. *Standard of Review*

The parties disagree on the standard of review. Hiegel would have us apply the clearly erroneous standard. The Turnbows assert the review is for an abuse of discretion.

On appeal, we review a circuit court's factual findings upon which it bases its decision for clear error. Ark. R. Civ. P. 52; *Sturdivant v. Sturdivant*, 367 Ark. 514, 517, 241 S.W.3d 740, 743 (2006). Here, we have no findings to review. And while it may be the better practice for a circuit court to make findings on motions to disqualify counsel, it is not required to do so. Ark. R. Civ. P. 52. In the absence of findings to review, on a motion to disqualify counsel, we will view the evidence and reasonable inferences therefrom in the light most favorable to

3

the appellee. *Berry v. Saline Mem'l Hosp.*, 322 Ark. 182, 187–88, 907 S.W.2d 736, 740 (1995).[1] With this standard of review for the facts and evidence in mind, we then review the disqualification decision as a whole for an abuse of discretion. *Howard v. Baptist Health*, 2022 Ark. 214, at 4, 654 S.W.3d 809, 812. An abuse of discretion means discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. *Gilbow v. Crawford*, 2015 Ark. App. 194, at 7–8, 458 S.W.3d 750, 755.

Hiegel's argument below was that The Jiles Firm's representation of the Turnbows created a conflict of interest or an appearance of impropriety. On appeal, the Turnbows argue that no such conflict existed, and any reliance on the appearance of impropriety is misplaced. We agree with the Turnbows.

## II. *Conflicts of Interest*

To begin, we use the Arkansas Rules of Professional Conduct as our touchstone in disqualification proceedings. *Sturdivant*, 367 Ark. at 517, 241 S.W.3d at 743.

Corporations and their stockholders are separate and distinct entities. *K.C. Props. of N.W. Ark., Inc. v. Lowell Inv. Partners, LLC*, 373 Ark. 14, 32, 280 S.W.3d 1, 15 (2008). This is true even when a stockholder owns a majority of the stock. *Id.* Even viewing the evidence in the light most favorable to Heigel Building Solutions, there was no evidence presented that Vinson ever worked for Hiegel Building Solutions.

---

[1]For what it is worth, viewing the evidence and reasonable inferences in the light most favorable to the appellee is functionally the same as a review for clear error. *See Handling Appeals in Arkansas*, ch. 9, "Standards of Review" (2022).

4

Taking Gregory's testimony as true, there is evidence that Vinson may have represented himself as counsel for both Gregory and Eagle Rock Contracting during the purchase of Gregory's interest in Eagle Rock Contracting. Even still, on cross-examination, Gregory stated that the purchase transaction was one transaction that had concluded.

There was no evidence introduced that either Vinson or The Jiles Firm has since provided or currently provides legal services to Gregory, individually. There was also no evidence introduced that either Vinson or The Jiles Firm currently provides legal services to Eagle Rock Contracting. Rule 1.7 governs conflicts of interest regarding current clients. We have established that this record does not provide any evidence that Hiegel Building Solutions or even Gregory Hiegel is a current client of Vinson or The Jiles Firm.

This record has, however, established that Vinson provides ongoing legal services to Eagle Rock Realty and Property Management, a parent corporation of Eagle Rock Contracting. But "[a] lawyer who represents a corporation or other organization does not, by virtue of that representation, necessarily represent any constituent or affiliated organization, such as a parent or subsidiary." Ark. R. Prof'l Cond. 1.7 cmt. 34. This is because Arkansas law and our professional rules respect the separate and distinct nature of legal entities. *See also* Ark. R. Prof'l Conduct 1.13(a) (providing that when a lawyer is employed by an organization, the lawyer represents the organization). Comment 34 to Rule 1.7 continues:

> Thus, the lawyer for an organization is not barred from accepting representation adverse to an affiliate in an unrelated matter, unless the circumstances are such that the affiliate should also be considered a client of the lawyer, there is an understanding between the lawyer and the organizational client that the lawyer will avoid representation adverse to the client's affiliates, or the lawyer's obligations to either

the organizational client or the new client are likely to limit materially the lawyer's representation of the other client.

The burden of proof regarding disqualification of counsel rests with the moving party. *Stuart v. Walther*, 2024 Ark. 41, at 6, 686 S.W.3d 486, 491. Gregory Hiegel is the only common link between the separate entity Hiegel Building Solutions, of which he is a 100 percent owner, and Eagle Rock Contracting, of which he is a 30 percent owner. If we employ the most flexible interpretation of "affiliate," then we could possibly say that Gregory is therefore also affiliated with Eagle Rock Realty and Property Management by virtue of being a partial owner in one of its subsidiaries. To be clear, this is a stretch. Regardless, even if Hiegel Building Solutions were "affiliated" with Eagle Rock Realty and Property Management, Hiegel has not established (1) that the circumstances dictate that Hiegel Business Solutions should also be considered a client of The Jiles Firm, (2) that any adverse-representation understanding regarding affiliates is in place; or (3) how The Jiles Firm's obligations to Eagle Rock Realty and Property Management or the Turnbows materially limits its representation of anyone involved.

The next issue, then, might have been: What duty does The Jiles Firm owe to Hiegel Building Solutions by virtue of Gregory Hiegel's status of a former client? But Hiegel never took the position below that Gregory was a former client, and in its brief to this court firmly asserts that he is not a former client. Still, even if Gregory were a former client, we cannot arrive at the conclusion that a conflict of interest exists on the basis of prior representation.

6

Arkansas Rule of Professional Conduct 1.9 governs an attorney's duties to former clients. Pursuant to Rule 1.9(a), "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."

Here, the evidence introduced that the prior representation, such that it might have been, was regarding Gregory, the individual, purchasing an ownership interest in Eagle Rock Contracting. Conversely, the current litigation is regarding a materialmen's-lien dispute between a home building company and its customers. Even giving Hiegel every benefit of the argument to this point, Hiegel presented neither evidence nor argument to the circuit court that the matters were the same or substantially similar. We will not consider arguments made for the first time on appeal; further, a party is bound by the scope and nature of the arguments made at trial. *Kapach v. Carroll*, 2015 Ark. App. 466, at 4, 468 S.W.3d 801, 804.

### III. *Appearances of Impropriety*

Hiegel next argues that even if no conflict exists, at a minimum, The Jiles Firm's representation of the Turnbows creates an appearance of impropriety. Hiegel's appearance-of-impropriety argument can be summed up as "because there was a conflict, it therefore appears improper." Specifically, Hiegel explains:

> Alternatively, the Circuit Court's disqualification ruling was correct because at a minimum the Jiles Firm representation of the Turnbows in the underlying lawsuit evinced the appearance of impropriety because the Jiles Firm also represented a separate entity that Greg Hiegel owns a significant interest in and was advised by Mr.

7

Thomas Vinson, an attorney for the Jiles portion of the separate business that Vinson represented.

In 1970, the American Bar Association approved the Model Code of Professional Responsibility, which our supreme court adopted as the governing standard for Arkansas attorneys. Cannon 9 of the Code, discussing the most general standards of conduct expected by lawyers, was that "[a] lawyer should avoid even the appearance of impropriety." Over time, this drew criticism because the concept was too imprecise to give guidance to attorneys and too vague to be a basis for professional discipline. *Floyd v. State*, 2016 Ark. 264, at 6, 495 S.W.3d 82, 86 (Brill, C.J., concurring). In 1986, the American Bar Association amended the model rules, notably excluding any reference to the appearance-of-impropriety concept. *See In re Ark. Bar Ass'n: Petition for the Adoption of Model Rules of Prof'l Conduct*, 287 Ark. App'x 495, 702 S.W.2d 326 (1985) (per curiam).

Yet the concept persisted in Arkansas, and for the next decade was included as a consideration whenever violations of rules of professional conduct were at issue. *See, e.g., McAdams v. Ellington*, 333 Ark. 362, 970 S.W.2d 203 (1998); *Norman v. Norman*, 333 Ark. 644, 970 S.W.2d 270 (1998); *Berry v. Saline Mem'l Hosp.*, 322 Ark. 182, 907 S.W.2d 736 (1995); *Burnette v. Morgan*, 303 Ark. 150, 156, 794 S.W.2d 145, 148 (1990); *First Am. Carriers, Inc. v. Kroger Co.*, 302 Ark. 86, 787 S.W.2d 669 (1990). It was a natural evolution then, that in 2005, the next major revision of our rules provided this guidance in the preamble:

> A lawyer owes a solemn duty to uphold the integrity and honor of the profession; to encourage respect for the law and for the courts; to act as a member of a learned profession; to conduct affairs so as to reflect credit on the legal profession; and to inspire the confidence, respect and trust of clients and the public. To accomplish

8

those objectives, the lawyer must strive to avoid not only professional impropriety, but also the appearance of impropriety. The duty to avoid the appearance of impropriety is not a mere phrase. It is part of the foundation upon which are built the rules that guide lawyers in their moral and ethical conduct. This obligation should be considered in any instance where a violation of the rules of professional conduct are at issue. The principle pervades these Rules and embodies their spirit.

Ark. R. Prof'l Conduct pmbl. cmt. 13A.

It is Hiegel's position that because Greogry and Vinson previously crossed paths professionally, The Jiles Firm should automatically be conflicted out. But the rules do not call for an automatic disqualification. Certainly, it would be simpler if they did. But our rules, as written, even contemplate a situation in which an attorney may accept representation adverse to an affiliate in an unrelated matter. *See* Ark. R. Prof'l Conduct 1.13 cmt. 34. The facts here are even more attenuated than a parent organization's counsel and its affiliate. The rules further contemplate a situation in which counsel may take representation adverse to a former client. In either scenario, it was Hiegel's motion, and he put forth no evidence or argument of exactly *how* Vinson's representation of the Turnbows is problematic.[2] Without anything more, we cannot say that Vinson or The Jiles firm has given the appearance of impropriety by representing the Turnbows in this matter.

Disqualification of an attorney is a drastic measure to be imposed only when clearly required by the circumstances. *Helena Country Club v. Brocato*, 2018 Ark. 16, at 5, 535 S.W.3d

---

[2]On appeal, Hiegel asserts that The Jiles Firm "gathered financial information [and] personal information from Mr. Hiegel during the previous representation," and its representation of Eagle Rock Realty and Property Management "gives the Jiles Firm access to confidential information related to Mr. Hiegel's ownership and assets." However, there was no evidence, testimony, or argument made to the circuit court to support the point.

272, 275. The bar for disqualifying an attorney is high; litigants are entitled to the counsel they choose. *Floyd*, 2016 Ark. 264, at 3, 495 S.W.3d at 84. After review, we hold that the circumstances do not clearly require disqualification; thus, the circuit court abused its discretion when it disqualified The Jiles Firm from representing the Turnbows.

Reversed and remanded.

VIRDEN and GLADWIN, JJ., agree.

*The Jiles Firm, LLP*, by: *Gary D. Jiles* and *Thomas V. Vinson*, for appellants.

*Jason Owens Law Firm, P.A.*, by: *Michael A. Mosley* and *Brooklyn Parker*, for appellee.